IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DELIA DE SANTIAGO LIZAMA,           )
MICHELLE OLSEN, on behalf of        )
themselves and all others similarly situated,  )
                                    )
            Plaintiffs,             )        Case No. 4-22-CV-00841-RLW
                                    )
vs.                                 )
                                    )
VENUS LABORTORIES, INC. d/b/a       )
EARTH FRIENDLY PRODUCTS             )
                                    )
            Defendant.              )


**<u>MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.    DEFENDANT'S PERSONAL JURISDICTION ARGUMENT INCORRECTLY APPLIES *BRISTOL-MYERS SQUIBB* TO CLASS ACTIONS ............................ 1

II.   PLAINTIFFS HAVE STANDING TO SUE FOR PRODUCTS NOT PURCHASED ....... 3

III.  PLAINTIFF LIZAMA STATES A CLAIM UNDER THE MMPA ................................ 7

      A.  PLAINTIFF LIZAMA SUFFERED AN ASCERTAINABLE LOSS ................................ 8

      B.  PLAINTIFF LIZAMA'S MMPA CLAIMS READILY SATISFIES THE REASONABLE CONSUMER STANDARD ........................................................................ 10

IV.  PLAINTIFF OLSEN SUFFICIENTLY STATES CALIFORNIA CONSUMER PROTECTION CLAIMS ......................................................................... 12

V.   PLAINTIFFS ADEQUATELY ALLEGE THAT THE PRODUCTS ARE NOT NON-TOXC, SAFER, AND/OR ENVIRONMENTALLY FRIENDLY .................................. 16

VI.  PLAINTIFFS SUFFICIENTLY STATE A CLAIM FOR BREACH OF WARRANTIES ............................................................................................................ 19

VII. PLAINTIFFS STATE A CLAIM FOR FRAUD AND PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT UNDER RULE 9(B) .......................................................... 20

VIII. PLAINTIFFS STAES A CLAIM FOR UNJUST ENRICHMENT AND NEGLIGENT MISREPRESENTATION AND ................................................................ 22

IX.  PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ............................... 22

X.   THIS COURT SHOULD DEFER RULING ON DEFENDANT'S CHALLENGE TO STANDING ............................................................................................ 23

CONCLUSION ........................................................................................................... 25

***Cases***

*Amchem* and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................... 24

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1977) ............................................. 3

*Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. 2013) .......................... 23

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) .......................... 20

*Blue Buffalo Co. v. Nestle Purina Petcare Co.*, 2015 WL 3645262 ...................................... 12

*Bratton v. Hershey Company*, 2017 WL 2126864 ...........................................................22, 23

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco City*, 137 S.Ct. 1773 (2017 ("*BMS*").............. 1

*Bruno v. U.S. Renal Care, Inc.*, 2022 WL 2439525 .............................................................. 13

*Buchta*, 2019 WL 4468943 ...............................................................................................24, 25

*Bush v. Rust-Oleum Corp.*, 2021 WL 24842 .......................................................................... 17

*Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) .............. 14

*Cheslow v. Ghirardelli Chocolate Company*, 497 F.Supp.3d 540 (N.D. Cal. Oct. 29, 2020) ........ 15

*Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900 (Mo. App. E.D. 2003) ................. 9

*Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) .............................................................. 17

*Davidson v. Kimberly-Clark Corp.*, 2014 WL 3919857 ........................................................... 3

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) ................................ 14

*Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) .................... 25

*Evans v. Linden Research, Inc.*, 763 F. Supp. 2d 735, 738 n.1 (E.D. Pa. 2011) .................... 14

*Fagan v. Neutrogena Corp.*, 2014 WL 92255 ........................................................................ 15

*Goldman v. Tapestry, Inc.*, 501 F.Supp.3d 662, 666, 2020 WL 6742780 ....................3, 5, 6, 7

*Grantham v. Wal-Mart Stores, Inc.*, 2012 WL 12898186 ...................................................... 20

*Hairston v. South Beach Beverage Co.*, 2012 WL 1893818 .................................................... 16

*Hawkins v. Nestle U.S.A. Inc.*, 2018 WL 746304 ................................................................... 23

*Hawkins v. Nestle U.S.A., Inc.*, 309 F. Supp. 3d 696, 708 (E.D. Mo. Feb. 16, 2018) ........... 22

*Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1059 (8th Cir. 2003) ......................... 17

*In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012) ................................................ 21

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 2021 WL 3191733 ................................ 17

*In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) ................................................ 5

*In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1218 (C.D. Cal. 2017) ...................... 3, 4, 5

*Johnson v. Trumpet Behavioral Health LLC*, 2022 WL 74163 ................................................ 13

*Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 ................................................ 15

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009) ................................................ 20

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 at 7631 (W.D. Mo. 2015) ..................... 4, 5, 6, 8, 9

*Kendrick v. Ryus*, 225 Mo. 150, 123 S.W. 937, 940 (1909) ................................................ 9

*Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1319, 1332 (D. Minn. 2018) ................................ 2

*Kostedt v. C.R. Bard, Inc.*, 2022 WL 292963 ................................................ 3

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) ................................................ 14

*Madenlian v. Flax USA, Inc.*, 2014 WL 7723578 ................................................ 15

*Mikhlin v. Johnson & Johnson*, 2014 WL 6084004 ................................................ 10

*Moore v. Compass Group USA, Inc.*, 2019 WL 4723077 (E.D. Mo. Sep. 26, 2019) ............... 1, 2, 3, 5, 6, 24, 25

*Moore v. Compass Group, USA, Inc.*, 2022 WL 4598558 ................................................ 4

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ................................ 15

*Morgan v. U.S. Express, Inc.*, 2018 WL 3580775 ................................................ 2, 3

*Nishimoto v. Cty. of San Diego*, 2017 WL 2709742 ................................................ 16

*Parker v. Wal-Mart Stores, Inc.*, 367 F. Supp. 3d 979, 986 (E.D. Mo. 2019) ................................ 23

*Perez v. Monster, Inc.*, 149 F. Supp. 3d 1176, 1185 (N.D. Cal. 2016) ................................ 20

*Phan v. Sargento Foods, Inc.* ................................................ 13

*Plubell v. Merck & Co.*, 289 S.W.3d 707. 715 (Mo. App. W.D. 2009) ................................ 8

*Polk v. KV Pharm. Co.*, 2011 WL 6257466 ................................................ 10

*Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021) ........................ 19

*Robertson v. Conopco, Inc.*, Case No. 2:15-cv-04006-MJW ................................................ 8, 10, 12

*Robie v. Trader Joe's Company*, 2021 WL 2548960 ................................................ 14

*Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 999 (S.D. Cal. 2015) ............................. 14

*Sloan v. GM LLC*, 2017 WL 3283998, at *10 (N.D. Cal. Aug. 1, 2017) .................................. 22

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-45 (9th Cir. 2020) ........................... 13

*Sosna v. Iowa*, 419 U.S. 393, 403 (1974) .................................................................. 24

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) .............................................. 24

*Swinter Group, Inc. v. Serv. Of Process Agents, Inc.*, 2019 WL 266299 (E.D. Mo. Jan. 18, 2019) ...............1, 2, 3

*Thomas v. U.S. Bank, N.D.*, 2012 WL 12897284 ........................................................ 24

*Thornton*, 2016 WL 4073713 ........................................................................... passim

*Twombly*, 550 U.S. at 556-57 ......................................................................... 17

*Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 982 n.38 (C.D. Cal. 2013) ................... 16

*Villa Lara v. LG Electronics U.S.A., Inc.*, 2018 WL 3748177 ....................................... 13

*Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) ............................. 25

*Warth v. Seldin*, 422 U.S. 490, 498 (1975) ........................................................ 24

*White v. Just Born, Inc.*, 2017 WL 3130333 ........................................................ 23

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ................................... 15

*Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1129 (C.D. Cal. 2010) ......................... 15

### Statutes

Cal. Civ. Code § 1780 ............................................................................... 13

Mo. Rev. Stat. § 400.2-314 ......................................................................... 19, 20

### Rules

Fed. R. Civ. P. 8 ................................................................................... 22

Rule 12 ............................................................................................. 17

Rule 23 ............................................................................................. 24

## INTRODUCTION

Plaintiffs Delia De Santiago Lizama and Michelle Olsen ("Plaintiffs") allege that, in an effort to increase profits and to gain an advantage over its lawfully acting competitors, Defendant Venus Laboratories, Inc. d/b/a Earth Friendly Products ("Defendants" or "Earth Friendly") falsely and misleadingly markets and labels its ECOS Products as "non-toxic," "safer," and environmentally friendly. Dkt. 15 ("FAC"), ¶¶ 4-6. Based on this marketing and labeling, reasonable consumers, including Plaintiffs, believe that the Products do not pose any risk of harm to humans, animals, and/or the environment.  However, the ECOS Products are not "non-toxic," "safer," and environmentally friendly because they contain toxic, harmful, and environmentally damaging ingredients. *Id.*, ¶¶ 9, 51-52. Accordingly, Plaintiffs pursue this class action to end Defendant's unlawful conduct.

## ARGUMENT

### I.   DEFENDANT'S PERSONAL JURISDICTION ARGUMENT INCORRECTLY APPLIES *BRISTOL-MYERS SQUIBB* TO CLASS ACTIONS

Defendant relies on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco City*, 137 S.Ct. 1773 (2017 ("*BMS*"), to argue that "[p]ersonal jurisdiction does not exist for Plaintiff Olsen's claims, since she has no connection to this forum state." Dkt. 23 at 3. But Defendant ignores *Swinter Group, Inc. v. Serv. Of Process Agents, Inc.*, 2019 WL 266299 (E.D. Mo. Jan. 18, 2019) and *Moore v. Compass Group USA, Inc.*, 2019 WL 4723077 (E.D. Mo. Sep. 26, 2019), two decisions of this Court. *Swinter* and *Moore* both held that *BMS* does not apply to class actions, and they require the same result here.  *BMS* does not affect personal jurisdiction over non-Missouri class members.

In *Swinter*, the plaintiff sought to certify a nationwide class of persons who were sent certain faxes by the defendants. One defendant argued, as Earth Friendly does here, that the court lacked specific personal jurisdiction "as to putative non-Missouri class members' claims" under *BMS*. *Swinter*, 2019 WL 266299 at *2. The defendant argued that the putative non-Missouri class members were not injured in Missouri and that the plaintiff could not assert a claim against "a non-resident

defendant in a state with no connection to their claims." *Id.* But this Court stated that the defendant was primarily relying on mass tort cases and did not cite any district courts in this Circuit that found *BMS* applies to class actions, as Earth Friendly has similarly failed to do. *Id.*

This Court accordingly refused to extend *BMS* to class actions. *Id.* It stated that a class action is fundamentally different from a mass-tort case, in part because a class action has procedural safeguards under Fed. R. Civ. P. 23, and that there "is but one 'suit,'" as opposed to a mass action where there are independent suits and parties. *Id.* This Court added that because the defendant must already litigate the named plaintiff's claims in this forum, there is "little hardship, as a jurisdictional matter, for it to also litigate the nationwide class claims" and that "it promotes efficiency and expediency to litigate all claims at once rather than to separate the nationwide class." *Id.* Accordingly, the Court followed "the better reasoned decisions declining to extend *BMS* to class actions…" *Id.* The Court went on to find that the Supreme Court's characterization of its holding as a "straightforward application…of settled principles of personal jurisdiction" (*BMS*, 137 S.Ct. at 1783) indicates that *BMS* did not require 'a substantial limiting of that valuable [class action] tool.'" *Swinter*, 2019 WL 266299 at *3 (quoting *Morgan v. U.S. Express, Inc.*, 2018 WL 3580775, at *6 (W.D. Va. July 25, 2018)).[1]

Likewise, in *Moore*, this Court held once again that *BMS* does not apply to class actions and, as a result, does not affect personal jurisdiction over non-Missouri class members. In *Moore*, the defendant again argued for dismissal "to the extent it purports to state claims on behalf of putative class members with no connection to Missouri because the Court lacks jurisdiction in light of the Supreme Court's opinion in [*BMS*]." *Moore*, 2019 WL 4723077, *7.  In once again rejecting this argument, this Court adopted "its analysis in *Swinter* and, again, notes that Congress created class actions to help 'overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action

---

[1] In reaching its decision, *Swinter* relied on *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1319, 1332 (D. Minn. 2018), which similarly declined to extend *BMS* to class actions. As *Knotts* stated, most courts to address this issue have ruled the same way due to the differences between mass tort cases and class actions. *Id.* at 1332.

prosecuting his or her rights.'" *Id.* at \*9 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1977) (internal quotation marks omitted). This Court indicated that it "is reluctant to believe that the Supreme Court's 'straightforward application … of settled principles of personal jurisdiction' in [*BMS*] requires a substantial limiting of that valuable tool." *Id.* (quoting *Morgan*, 2018 WL 3580775, at \*6). Accordingly, this Court held that it "follows *Swinter* and the better-reasoned decisions declining to extend *BMS* to class actions and denies [defendant's] motion to dismiss as it relates to lack of personal jurisdiction." *Moore*, 2010 WL 4723077, at \*9.[2] Indeed, nothing in *BMS* impacts personal jurisdiction over Earth Friendly, and its argument should be rejected.

## II.    PLAINTIFFS HAVE STANDING TO SUE FOR PRODUCTS NOT PURCHASED

Defendant contends that Plaintiffs do not have standing to sue for products they did not purchase. Dkt. 23 at 5-7. But this Court has rejected this argument. In the Eastern District of Missouri, "the appropriate inquiry for determining if [plaintiff] has standing as to products that [plaintiff] did not personally purchase is 'whether there is sufficient similarity between the products purchased and not purchased.'" *Goldman v. Tapestry, Inc.*, 501 F.Supp.3d 662, 666, 2020 WL 6742780, at \*2 (E.D. Mo. Nov. 17, 2020) (citing *Davidson v. Kimberly-Clark Corp.*, 2014 WL 3919857, at \*6 (N.D. Cal. Aug. 8, 2014)). This Court in *Goldman* concluded that "plaintiffs have standing to assert claims on behalf of a class as to products they have not purchased as long as '***the products and alleged misrepresentations are substantially similar***.'" *Goldman*, 501 F.Supp.3d at 667 (citation omitted) (emphasis added). *See also In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1218 (C.D. Cal. 2017) (noting that "[c]ourts have taken three broad positions on how related the product purchased by the named plaintiff and putative class members must be" and concluding that the "substantially similar" approach, which asks "whether the plaintiff's averred injury is substantially similar to the claims of those she

---

[2] Defendant also relies on *Kostedt v. C.R. Bard, Inc.*, 2022 WL 292963, at \*3 (E.D. Mo. Feb. 1, 2022) in support of this argument. But *Kostedt*, like *BMS*, is a mass tort action and thus does not affect personal jurisdiction over non-Missouri class members. *Swinter*, 2019 WL 266299 at \*2-3; *Moore*, 2010 WL 4723077, at \*9.

seeks to represent," is most consistent with Supreme Court precedent)); *Moore v. Compass Group, USA, Inc.*, 2022 WL 4598558, at *5 (E.D. Mo. Sep. 30, 2022) ("This Court is inclined to agree with Plaintiff that the third approach is more appropriate than either the narrow approach represented in *Kelly* [*v. Cape Cod Potato Chip Co.*], 81 F. Supp. 3d [754 at] 7631 [W.D. Mo. 2015]], or the broad approach represented in *Vizio*, 238 F. Supp. 3d at 1281.").

Here, "Lizama's purchases include, without limitation, ECOS® Hypoallergenic Laundry Detergent–Lavender, ECOS® Hypoallergenic Dish Soap-Free & Clear, and ECOS® Hypoallergenic Laundry Detergent-Magnolia & Lily." FAC, ¶ 16. And "Olsen's purchases include, without limitation, ECOS® Hypoallergenic Laundry Detergent – Free & Clear." *Id.*, ¶ 18. The fact that Plaintiffs did not purchase the remaining ECOS Products at issue that are identified in the FAC is of no event because the misrepresentations on the labeling of those Products are substantially similar to the ones Plaintiffs purchased. *Id.*, ¶¶ 38, 40-41. And the misrepresentations Defendant universally makes in its marketing and the statements on its website regarding the Products, do not differentiate between the Products Plaintiff purchased and the remaining ECOS Products at issue. *See id.*, ¶¶ 38-39, 42-43. Indeed, Defendants' labeling and marketing for each and every one of the Products that Plaintiffs purchased and the ECOS Products identified in the FAC were falsely, misleadingly, and deceptively labeled and marketing as "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable" during the relevant class period. *Id.*, ¶¶ 4, 6, 38-43. Contrary to these representations, none of the Products at issue are "non-toxic," "safer," and environmentally friendly because the Products can cause harm to humans, animals, and/or the environment. *Id.* at ¶ 6. As such, Plaintiffs have standing to bring claims regarding all of the Products identified in the FAC. *Id.*, ¶ 4.[3]

---

[3] Earth Friendly falsely claims that "few, if any," of the ECOS Products contain any of the challenged statements.  But, as alleged in the FAC, Earth Friendly has misrepresented that the other 50-plus ECOS Products at issue are "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable" throughout the Class

Defendants' argument to the contrary rests primarily on the reasoning of *Kelly* (holding plaintiff lacked standing to bring claims for food products not purchased). 81 F. Supp. 3d at 762-63. But *Kelly* was decided before *Goldman*, in which this Court expressly rejected the courts' approach in *Kelly* to resolve the class "standing" issue with respect to products a plaintiff did not purchase. *Goldman*, 501 F.Supp.3d at 667. And since Plaintiffs have standing to bring suit, this Court need not engage in a separate standing analysis to determine whether Plaintiffs adequately represent the interests of the putative class. *Id.* (citing *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017). This inquiry does not occur until the class certification stage. *Goldman*, 501 F.Supp.3d at 667 ("Rather than a standing issue, the distinction between product types may instead create an issue for the typicality of Plaintiffs' claims or the adequacy of their representation, which is better resolved at class certification.").

Defendant relies on *Moore* in further claiming that Plaintiffs lack standing to sue for products not purchased because Plaintiffs fail to allege any similarity between the products at issue.. In doing so, Defendant completely misrepresents this Court's holding in *Moore* and ignores *Goldman's* ruling that the distinction between product types is better resolved at class certification. 501 F.Supp.3d at 667.

In *Moore,* the plaintiffs alleged that that the defendant's single-price labeling machines were misleading and deceptive in violation of numerous consumer protection laws because the machines did not contain any label or other signage alerting consumers to the fact that the displayed price was a cash-only price and card transactions would cost ten cents more per item. 2022 WL 4598558 at 3. The plaintiffs all alleged that they purchased items from unlabeled machines. *Id.* They did not allege that any of their purchases were from single price labeled machines. *Id.* The defendant argued that plaintiffs lacked standing for claims for purchases made from its single price labeled machines because none of them suffered any cognizable injury from those machines. *Id.*

The Court agreed that the approach in *Goldman* is more appropriate in determining standing for

---

Period. *Id.*, ¶¶ 38-43. Importantly, Earth Friendly fails to identify one Product that does not contain any of the false and misleading representations.

products not purchased than either the approach represented in *Kelly*, or the broad approach represented in *Vizio*, but concluded that "[b]ecause Plaintiffs do not allege that they were injured by single priced labeled machines, and because those claims do not involve 'products and alleged misrepresentations [that] are substantially similar' to Plaintiff's claims, *Goldman*, 501 F. Supp. 3d at 667, Plaintiffs lack standing to bring claims based on Defendant's single priced labeled machines." *Moore*, 2022 WL 4598558 at *6. This Court reasoned that "[c]laims based on unlabeled machines and those based on single-price-labeled machines will involve different questions of both law and fact, and success on one will not be dispositive of the other. The evidentiary difference between showing that no label was present and showing that a label was misleading is obvious." *Moore*, 2022 WL 4598558 at *5-6.

*Moore* has no relevant application to Plaintiffs' claims here. Plaintiffs are not claiming that they were misled one way, and then attempting to assert claims based on behalf of individuals who were misled in a different way. Defendant misrepresents that the ECOS Products Plaintiffs did not purchase are non-toxic, safe, and environmentally friendly in the marketing and labeling of the Products and on Defendant's website, all of which are substantially similar to the ones for the products Plaintiffs purchased. As such, Plaintiffs' claims will involve the exact same questions of both law and fact, and success on one will be dispositive of the other. There is no evidentiary difference in showing that the marketing and labeling of the Products the Plaintiff's purchased was misleading and showing that the marketing and labeling for the Products that Plaintiffs did not purchase was misleading.

Further, Defendant's claim that "Plaintiffs fail to allege any facts demonstrating any similarity between the products at issue." Dkt. 23 at 6-7. But, again, *Goldman* held that the distinction between product types is better resolved at class certification. 501 F.Supp.3d at 667. Regardless, Plaintiffs specifically allege that this action seeks to remedy Defendant's false and misleading business practices with respect to the marketing and sale of Earth Friendly's **household cleaning products**..." FAC at ¶¶ 4-5, 24, 37, 44, 106. It defies common sense to argue that all-purpose cleaners, shower cleaners, window cleaners, toilet cleaners, laundry detergents, hand soap, dish soap, odor eliminators, or stain

removers "have little in common." Dkt. 23 at 6. Moreover, Defendant's marketing and labeling of the Products do not differentiate between its cleaners, soaps, odor eliminators or other products. Indeed, Defendant's marketing, along with its "Guiding Principles," contain numerous false and misleading representations that are made about each and every ECOS Product in general and without regard to the different types of household cleaning products it manufactures and sells to consumers. *See* FAC at ¶¶ 42-43. Indeed, each and every ECOS Product functions as a household cleaning product. To suggest that there is a "vast difference" between these types of products is patently absurd.

Finally, Defendant also attempts to claim that Plaintiffs lack standing to sue for products not purchased because the products contain different ingredients and the impact of the ingredient differences cannot be ignored. Dkt. 23 at 6-7. But Defendant does not cite any law in support of this assertion. And, this argument was specifically rejected in *Goldman*, because Plaintiffs "[have] not alleged that [they were] injured by any of the specific items [they] purchased." 501 F.Supp.3d at 667. Rather, any injury Plaintiffs suffered were caused by the misrepresentations on the labeling of the Products, and in the marketing, advertising, and statements on Defendant's website, all of which are substantially similar to the representations Plaintiffs relied on in making their purchases. *Id.*; FAC, ¶¶ 17, 19. Thus, the Court should not dismiss Plaintiffs' claims concerning products they did not purchase.

## III.    PLAINTIFF LIZAMA STATES A CLAIM UNDER THE MMPA

Defendant claims that Lizama fails to state a claim under the Missouri Merchandising Practices Act ("MMPA") because she has not alleged any loss or damages and all of the ingredients at issue were disclosed on the product labels, undoing any claim of deception. Dkt. 23 at 7-11. But Lizama has adequately alleged an ascertainable loss because the FAC specifically alleges that the products she purchased were worth less than the products she thought she had purchased had Earth Friendly's false and misleading representations been true. And courts in Missouri have rejected Earth Friendly's argument that a Plaintiff who reads and relies on a product's label eliminates any consumer deception caused by labeling misrepresentations. Thus, Lizama states a claim under the MMPA.

A.        **Plaintiff Lizama Suffered an Ascertainable Loss**

As an initial matter, Defendant claims that Lizama's MMPA claim fails because she fails to allege facts showing any actual loss. Dkt. 23 at 8-9. While Defendant concedes that Lizama's damages are measured by the benefit of the bargain rule, it completely misrepresents how Missouri courts apply that rule in this type of case. *Id.* Under Missouri law, a plaintiff must show that she "suffered a pecuniary loss in order to prevail on her MMPA claim." *Kelly*, 81 F. Supp. 758.  The benefit of the bargain rule allows a purchaser "to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented." *Id.*; *see also Plubell v. Merck & Co.*, 289 S.W.3d 707. 715 (Mo. App. W.D. 2009) (benefit of the bargain rule is "applicable in MMPA cases to meet the element of ascertainable loss"). As such, Lizama's allegations in her FAC that she suffered damages because the products she purchased were worth less than the products she thought she had purchased had Defendant's non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable" representations been true establish an ascertainable loss under the MMPA. FAC, ¶ 90.

In *Kelly*, the plaintiff alleged that she purchased chips that were represented as "natural" when they in fact contained synthetic preservatives. She therefore alleged that the chips were worth less than they were represented to be. In finding these allegations sufficient to allege ascertainable loss, the court held that "Plaintiff need only allege that the actual value of the product purchased was less than the value of the product as represented to state a claim for an ascertainable loss." *Kelly*, 81 F. Supp. at 758. "Thus, Plaintiff's Petition, alleging that the Chips as purchased were worth less than as represented sufficiently states that she has suffered an ascertainable loss under the MMPA at this stage of the litigation." *Id.*; *See also Plubell*, 289 S.W.3d at 715 ("because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively reasonable loss under the MMPA using the benefit-of-the-bargain rule"); *Robertson v. Conopco, Inc.*, Case No. 2:15-cv-04006-MJW, Dkt. 22 Order at 9 (W.D. Mo. Aug. 31, 2015) (plaintiff pled a plausible theory of damages where FAC pled

that, '[b]ecause the Products are not 'natural' as they represented to be, the Products as sold were worth less than the Products as represented, and Plaintiff and class members paid more for them then they would have had the truth [been] known.'").

Here, Lizama satisfies the ascertainable loss standard in *Kelly* because she pleads all of these elements. FAC, ¶¶ 2, 14, 62, 90, 101-102, 105-106, 117, 133, 149, 163. Lizama alleged in her FAC that she and the Class Members paid a premium for the Products based on Earth Friendly's representations that they are non-toxic, safe, and environmentally friendly, and suffered economic damages, in that the products she and other Missouri Subclass Members purchased were worth less than the products they thought they had purchased had Defendant's representations been true. *Id*. As a result, Plaintiff and the Class Members suffered an injury in the amount of the purchase price and/or the premium paid because the actual value of the Products as purchased was less than the value of the Products as represented. *Id.* Under clear Missouri authority, Lizama has adequately alleged ascertainable loss.

Defendant, however, takes issue with these allegations "because Lizama fails to allege that the detergent and dish soap she bought were worth less than the price she paid, she has not alleged any loss or damages." Dkt. 23 at 9.[4]  But, as the court in *Kelly* made clear in rejecting these arguments, such allegations are not necessary:

> Defendants also argue that Plaintiff has failed to allege the amount of the price premium or what Defendants' Chips should have cost…Again, however, under the benefit of the bargain rule as applied to MMPA claims, Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for ascertainable loss.

> Whether Plaintiff can present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss.

81 F. Supp. at 758; *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900 (Mo. App. E.D. 2003)

---

[4] Defendant also claims that Lizama "has not even alleged that she could have bought comparable products elsewhere for less money." Dkt. 23 at 9. In doing so, Defendant is seeking to impose the requirement of a price-value differential that has been repeatedly and explicitly rejected by the Missouri Supreme Court. *Kendrick v. Ryus*, 225 Mo. 150, 123 S.W. 937, 940 (1909) (explaining that the benefit of the bargain rule is intended to fulfill a defrauded party's full expectations, regardless of whether they received something worth the price paid).

(Whether Plaintiff "can present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss."). *See, e.g.*, *Robertson*, Dkt. 22 Order at 9-10 ("Defendant further argues that Plaintiff has failed to plead how much 'more' she paid for the Products; what the 'actual value' of the Products is; what the value of the Products would have been if they 'had been as advertised'; and whether a cheaper comparable product exists…The Court finds that here, Plaintiff has plausibly alleged an ascertainable loss, sufficient to survive a motion to dismiss[.]"); *Thornton*, 2016 WL 4073713, at *4.

Defendant then cites a series of irrelevant cases involving products with undisclosed regulatory violations or undisclosed risks that had not manifested themselves. Dkt. 23 at 9 (quoting and citing *Mikhlin v. Johnson & Johnson*, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014); *Polk v. KV Pharm. Co.*, 2011 WL 6257466, at *5 (E.D. Mo. Dec. 15, 2011)).  The damages theory in each of those cases was that, because the defendant did not disclose the risk of the products or previous regulatory violations, plaintiffs paid more for the products than they would have had the risks/violations been disclosed, despite the fact that the products worked as advertised and the supposed risks had not manifested themselves. In each instance the court rejected this theory of ascertainable loss because each plaintiff failed to allege they got anything other than what they paid for. In other words, the alleged MMPA violations related to the risks/violations associated with the products, and not the "nature and quality" of the products themselves.[5]

## B.    Plaintiff Lizama's MMPA Claims Readily Satisfies the Reasonable Consumer Standard

In an argument better served by a motion for summary judgment, Defendant argues that Plaintiff Lizama "has not plead a deception, misrepresentation, omission, or half-truth" under the MMPA

---

[5] *See Mikhlin*, 2014 WL 6084044 at * 3 (where plaintiffs contend that they would not have purchased and used Johnson's Baby Powder had they known about the undisclosed increased ovarian cancer risk, the plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages); *Polk*, 2011 WL 6257466, at *5 (no damages where plaintiff alleges only that the product purchased was "adulterated" under the FDA's current good manufacturing practices, and did not allege "misrepresentations of the nature and quality of the product purchased" or that the product was "anything other than what it has always purported to be").

because, "[a]pplying the reasonable standard here, all of the ingredients allegedly it issue were, indisputably, clearly, and accurately disclosed on the product labels, undoing any claim of deception." Dkt. 23 at 10. Such an argument is flawed both as a matter of procedure and of substance.

A reasonable consumer's interpretation of a labeling claim is not something that can be determined at the motion to dismiss stage. Yet Defendant requests that this Court take the extraordinary step of deciding a salient fact question (although it attempts to disingenuously posit the inquiry as a question of law), and determine that no reasonable consumer would be misled by the Defendant's statements that its Products are "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable" when they contain ingredients that can cause harm to humans, animals, and/or the environment because all of the ingredients are disclosed on the product labels. Dkt. 23 at 10-11. Defendant makes this request despite the fact that Missouri courts have consistently rejected the notion that a court can decide this issue on a motion to dismiss. Moreover, this case does not represent a "rare circumstance" that would justify an early determination of whether a reasonable consumer would be deceived. *See Thornton*, 2016 WL 4073713, at *3 n.3 ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss," and noting that the case is not one of the "rare situations" in which a court will find a lack of deception as a matter of law). Contrary to Defendant's assertion, this case does not represent a situation where Plaintiff has pled misrepresentations on which no consumer could conceivably rely. *See* Dkt. 23 at 9-11. Instead, as alleged, Lizama and a similarly situated class of consumers were misled by the representations regarding the Products nature and quality on the Products' labeling and packaging. FAC, ¶¶ 38-49. For purposes of an initial pleading, Lizama has adequately alleged her claim.

Defendant argues that a reasonable consumer would not have been deceived because the product's ingredient list clearly disclosed the disputed ingredients and therefore the packaging was not misleading. Dkt. 23 at 10-11. But courts in Missouri, including this one, have rejected Defendant's

argument that a Plaintiff who reads and relies on a product's label eliminates any consumer deception caused by labeling and packaging misrepresentations.

In *Thornton*, the plaintiff alleged that the defendant misrepresented that its muffin mix contained "Nothing Artificial" when, in fact, it contained artificial, synthetic substances. 2016 WL 4073713, at *1. The defendant argued that a reasonable consumer would not have been deceived because the product's ingredient list clearly disclosed the disputed ingredients and therefore the packaging was not misleading. *Id.* at 2. This Court rejected defendant's argument, holding that "the mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled, and that the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry." *Id.* at 3 (citing *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, 2015 WL 3645262, at *5 (E.D. Mo. June 10, 2015); *Robertson, Inc.*, 2:15-cv-04006-MJW (Dkt. 36 at 10) ("reasonable consumers could still be deceived or misled by certain products despite their having an ingredient list on the package."); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. Ct. App. 2016) ("The FDA does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception… the 'ingredient list' defense cannot, as a matter of law, defeat an MMPA claim.").

Importantly, Defendant fails to cite any case law in support of this argument. Instead, it makes the blanket assertion that "[t]he label disclosures are fatal to Lizama's claims: the ingredients are accurately listed, undoing any claim of an MMPA prohibited practice." Dkt. 23 at 10. But that assertion is in direct contradiction to the law in in Missouri.  Thus, Defendant's attempts to dismiss Lizama's MMPA claims should be denied.

## IV.   PLAINTIFF OLSEN SUFFICIENTLY STATES CALIFORNIA CONSUMER PROTECTION CLAIMS

Defendant argues that Plaintiff Olsen's claims pursuant to California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") fail because she cannot plead equitable claims in the

alternative here. Dkt. 23 at 12 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-45 (9th Cir. 2020)). But that is a complete misrepresentation of both California law and Olsen's FAC. The only requirement at the pleading stage to state a claim under the UCL and FAL is that "***a plaintiff must specifically allege she lacks an adequate legal remedy for her UCL claim to survive a motion to dismiss***." *Bruno v. U.S. Renal Care, Inc.*, 2022 WL 2439525, at 7 (C.D. Cal. Jul. 5, 2022) (emphasis added) (citing *Sonner*, 971 F.3d at 844 (dismissing UCL claim because "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy"); *Johnson v. Trumpet Behavioral Health LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (citing *Sonner*, 971 F.3d at 844 ) ("But ***the fundamental thing that Sonner, by its own terms, requires at the pleadings stage is that the complaint 'allege that [the plaintiff] lacks an adequate legal remedy*.***") (emphasis added).

Here, Olsen did exactly that in alleging numerous times in the FAC that she has "no adequate remedy at law" for her UCL and FAL claims. FAC, ¶¶ 185, 192, 204, 215, 229. Defendant admits as much. Dkt. 23 at 12, fn. 9. That is all that is required under *Sonner* at the pleading stage. Indeed, Olsen did not plead in the alternative here. As such, Defendant's reliance on *Phan v. Sargento Foods, Inc.* is completely irrelevant. Dkt. 23 at 12. Defendant's reliance on *Sonner* demonstrates that Olsen states a claim under the UCL and FAL. Indeed, Defendant fails to cite any law in support of its contention that Olsen's UCL and FAL claims fail. The Court should reject this argument.

Next, Defendant contends that Olsen has not adequately alleged damages in support of her UCL, FAL, and Consumer Legal Remedies Act ("CLRA") claims "because she has not alleged that she did not get the benefit of the bargain for the product she purchased." Dkt. 23 at 12-13.[6] That is not true.

---

[6] As a threshold matter, Defendant argues that Olsen's CLRA claim must be dismissed for failure to follow the statute's venue-affidavit requirement. Dkt. 23 at 11. The CLRA requires a plaintiff to concurrently file with the complaint an "affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d). Failure to file this affidavit requires that the claim be dismissed without prejudice. *Id.* But the CLRA's venue-affidavit requirement is a state procedural rule inapplicable in federal court because "application of the requirement does not have a significant impact on the outcome of the case." *Villa Lara v. LG Electronics U.S.A., Inc.*, 2018 WL 3748117, *6 (D. Minn. Aug. 7, 2018) (citing *Evans*

Plaintiff Olsen alleges that she purchased the Products at a premium price based on her reading of Earth Friendly's marketing, advertising, and labeling. Pleading economic injury under California law requires a plaintiff to allege that the label at issue "caused the product to be sold at a higher price." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018).

Here, Olsen makes a litany of allegations in the FAC that she and the California Subclass "paid an unwanted premium for these Products" and "have suffered injury in fact and have lost money as a result of Defendant's "unfair," "fraudulent," and "unlawful conduct." FAC, ¶¶ 185, 193, 205, 288. They paid for products that they believed were non-toxic, safe, and environmentally friendly when, in fact, they were not. *Id.* Olsen and the California Subclass "would not have purchased the Products, or paid substantially less for the Products, if they had known that they were not not-toxic, safe, and environmentally friendly." *Id.*

These allegations are more than sufficient to suffice the plausibility standard. *Robie v. Trader Joe's Company*, 2021 WL 2548960, at *6 (N.D. Cal. Jun. 14, 2021) (citing *Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359, 361 (9th Cir. 2009) (holding that under the UCL, FAL, and CLRA, sufficient injury pled when plaintiff alleged "he did not receive what he had paid for" and "he would not have paid had he known the truth"); *Davidson*, 889 F.3d at 965 ("[T]he economic injury of paying a premium for a falsely advertised product is sufficient hard to maintain a cause of action."). *See also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.").

Finally, Defendant repeatedly argues that no reasonable consumer could be misled by its labeling because the ingredients are disclosed on the ingredients list on the back of the products. Dkt.

_____

*v. Linden Research, Inc.*, 763 F. Supp. 2d 735, 738 n.1 (E.D. Pa. 2011); *see also Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 999 (S.D. Cal. 2015).

23 at 13. But Defendant's arguments that the ingredient list on the Products clear up any misconception is contrary to California law. Courts in California have repeatedly held that a defendant's argument that "any ambiguity is … dispelled by the explicit list of ingredients elsewhere on the product is foreclosed by *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)." *Fagan v. Neutrogena Corp.*, 2014 WL 92255, at \*2 (C.D. Cal. Jan. 8, 2014); *see also, e.g., Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at \*8 (N.D. Cal. Dec. 10, 2013) ("under *Williams*, a defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused"). In *Williams*, the Ninth Circuit explained that "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." 552 F.3d 934, 939–40. Therefore, an ingredient list should not "shield [a manufacturer] from liability for the deception" caused by misleading representations on a product's labeling. *Id.; see also Yumul v. Smart Balance, Inc.*, 733 F.Supp.2d 1117, 1129 (C.D. Cal. 2010) ("*Williams* stands for the proposition that where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the smallprint nutritional label to contradict and cure that misrepresentation.").[7] Here, Olsen alleges that the "non-toxic," "safer," and environmentally friendly representations on the Products' labeling contradicts the actual contents of the Products because they contain ingredients that can cause harm to humans, animals, and/or the environment.[8]

In *Madenlian v. Flax USA, Inc.*, 2014 WL 7723578, \*4 fn. 7, (C.D. Cal. March, 31, 2014), the court found that the only two cases cited by Defendant in support of this argument are inapposite

---

[7] Defendant's reliance on *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) is irrelevant because "[t]he standard articulated in *Moore* is no different than the standard" in *Williams*." *Cheslow v. Ghirardelli Chocolate Company*, 497 F.Supp.3d 540 (N.D. Cal. Oct. 29, 2020) (citing *Williams*, 552 F.3d at 939-40). Here, Plaintiffs allege that the ingredient list on the back label conflicts with the Products deceptive front labels and additional statements on the back of the packaging.

[8] Defendant will likely argue that this rule does not apply because it disagrees that the front labeling is misleading. But it does not contend that the challenged ingredients (which are only disclosed in the ingredients list) are "non-toxic," "safer," and/or environmentally friendly. Therefore, this is not a case where the Court can conclude, as a matter of law, that the front and back labels are consistent. Here, Defendant's argument turns on a factual dispute about how consumers construe the front labeling.

because they involve products in which the allegedly deceptive labeling was not in fact inconsistent with the ingredients of the products at issue. *Id.* (citing *Hairston v. South Beach Beverage Co.*, 2012 WL 1893818, at \*5 (C.D. Cal. May 18, 2012) (noting that the ingredient list was consistent with the front label statement of "all natural with vitamins").[9]

Thus, Plaintiff Olsen's sufficiently states California consumer protection clams.

## V.   PLAINTIFFS ADEQUATELY ALLEGE THAT THE PRODUCTS ARE NOT NON-TOXC, SAFER, AND/OR ENVIRONMENTALLY FRIENDLY

Defendant contends that "Plaintiffs' FAC is nothing but speculation layered on conjecture" based on a FAC that "launch[es] a myriad of objections to dozens of ingredients, in dozens of products, calling them unsafe." Dkt. 23 at 13-14. Specifically, Defendant argues that "Plaintiffs cannot simply list ingredients, contemplate a parade of horribles, and hope to survive the heightened pleading standards of Rule 9(b)." *Id.* Defendant's argument, however, applies an improper standard that looks to evidence of facts, rather than pled facts taken as true, and relies on a case from New York where the plaintiff's complaint merely stated that the challenged products' non-toxic claims were false "***upon on information and belief***" that their ingredients were harmful, as opposed to Plaintiffs' FAC that specifically identifies numerous ingredients which are toxic by definition under federal law, and cites to studies and public health authorities that have concluded that the Products contain numerous ingredients that are toxic, carcinogenic, and harmful to humans, animals and/or the environment.

As an initial matter, Defendant's repeated insistence that Plaintiffs must, at this early stage, conclusively "show" that the Products are toxic, unsafe, and harmful to the environment is inappropriate because it misconstrues the relevant procedural standard on a Rule 12(b)(6) motion to dismiss. "Plaintiff is not required to prove her allegations to survive a 12(b)(6) motion to dismiss. Rather, a plaintiff need only plead factual allegations which, taken as true, indicate a plausible claim for relief." *Nishimoto v. Cty. of San Diego*, 2017 WL 2709742, at \*5 (S.D. Cal. June 20, 2017) (citing

---

[9] Defendant also relies on *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 982 n.38 (C.D. Cal. 2013), which cites *Hairston*, in support of its argument.

Rule 12(b)(6) and *Twombly*, 550 U.S. at 556-57). For purposes of evaluating a motion to dismiss, "[t]he complaint must be liberally construed in the light most favorable to the plaintiff." *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). The court should only dismiss those claims for which it appears "beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1059 (8th Cir. 2003). At this early stage, Plaintiffs have pled ample facts, including evidence showing the ingredients in the Products are toxic, harmful, dangerous, and environmentally damaging (FAC, ¶¶ 51-52); *see also, infra*), and Defendant's contention that the specific amounts, concentrations, forms, and conditions of those ingredients may not be toxic or harm the environment is a question of fact for experts to ultimately weigh in on at summary judgment or trial. *See, e.g., Bush v. Rust-Oleum Corp.*, 2021 WL 24842, at *5 (N.D. Cal. Jan. 4, 2021) ("Moreover, Rust-Oleum characterizes the plaintiff's claim as a challenge to the ingredients in the product (which may be toxic), regardless of whether the product itself is toxic and causes harm. The plaintiff counter[s] that the ingredients are relevant to whether the product poses a risk of harm. These are not questions that can be resolved on a motion to dismiss.").

Indeed, courts in analogous cases, where the plaintiffs allege that certain products' "non-toxic" or environmentally friendly labeling claims are false because specified ingredients pose a risk of harm to people, animals, or the environment, have found that the mere identification of those harmful ingredients in the complaint was sufficient to state a false advertising claim under Rule 9(b), as answering the question if those ingredients are harmful reaches beyond the pleadings to the evidence underlying the facts pled. *See, e.g., Bush*, 2021 WL 24842, at *5; *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 2021 WL 3191733, at *6 (N.D. Cal. July 28, 2021) ("[I]t is not the Court's role to determine on a motion to dismiss whether the Products are in fact toxic. It is enough at this stage that Plaintiffs have alleged that the Products 'contain certain ingredients, which, at their given concentrations in the Products, can cause harm to humans, animals, and/or the environment,' and that Plaintiffs detail the specific ingredients."). Plaintiffs allege as much. FAC, ¶¶ 50-52.

Moreover, in making this argument, Earth Friendly completely ignores the litany of specific allegations in Plaintiffs' FAC that detail why the ingredients are toxic and harmful, including identifying ingredients which are toxic by definition under federal law, and citations to studies and public health authorities that have concluded that the Products contain numerous ingredients that are carcinogenic, not safe, and harmful to humans, animals and/or the environment. Earth Friendly takes issue with the ingredient acetic acid *which is an ingredient in only one (1) of the ECOS Products* and claims that it is vinegar. Dkt. 23 at 14. But if the acetic acid ingredient in Earth Friendly's Products is just "vinegar," then why not simply list "vinegar" as the ingredient in the Product?  And Plaintiffs' FAC specifically alleges that acetic acid "is classified by multiple federal laws as a hazardous and toxic substance." FAC, ¶ 51.a. Indeed, numerous ingredients in the ECOS Products are "toxic by definition under federal law." *Id.* ¶¶, 51.w. [10], 51.y.; 51.ee., 51.gg., 51.ii. Plaintiffs also cite to several studies that demonstrate the that the ingredients in the ECOS Products are toxic and harmful to the environment. *Id.*, 51.q., 51.u., 51.w., 51.hh. And Plaintiffs cite to numerous public health and safety organizations that have determined that many of the ingredients in the ECOS Products are toxic, carcinogenic, harmful, and environmentally damaging. *Id.*, ¶¶ 51.a., 51.c., 51.q., 51.r., 51.t., 51.w., 51.x., 51.y., 51.hh.

Yet Earth Friendly gripes that Plaintiffs "simply lists ingredients" in "calling them unsafe." Dkt. 23 at 13-14. Not so. These allegations are more than sufficient to demonstrate that Earth Friendly "greenwash" its Products by deceptively claiming that its household cleaning products are "non-toxic," "safer," and environmentally friendly. No product labeled "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly,"

---

[10] Phenoxyethanol is one of the ingredients used in thirty-seven (37) of the ECOS Products. Phenoxyethanol is toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses. It is toxic to the kidneys, the nervous system, and the liver. It degrades into substances that are even more toxic. It is a Category 2 germ cell mutagen, meaning that it is suspected of mutating human cells in a way that can be transmitted to children conceived after exposure. Phenoxyethanol is an ethylene glycol ether, which is known to cause wasting of the testicles, reproductive changes, infertility, and changes to kidney function. Phenoxyethanol is also Category 2 carcinogen, meaning that it is suspected to induce cancer or increase its incidence. *Id.*, ¶¶ 10, 55.y.

and/or "sustainable" should contain any of the ingredients identified in the FAC. FAC, ¶ 52.

The only case that Earth Friendly relies on in support of this improper argument is *Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021). In *Rivera*, the court dismissed the plaintiff's "non-toxic' claims regarding household cleaning products because "the Complaint does not adequately allege that the Products are toxic." *Id.*, at *5. The plaintiff's complaint merely alleged that the ingredients in the products at issue were toxic and harmful "upon information and belief." Exhibit 1, ¶¶ 25-29, 36-43. The *Rivera* FAC did not detail why the ingredients were toxic, did not allege whether any of the ingredients were toxic by definition under federal law, and failed to cite to any studies or public health authorities that have concluded that the ingredients in the product at issue were toxic, not safe, and harmful to the environment. *See id.* As such, *Rivera* is completely irrelevant to Plaintiffs' allegations. Thus, Plaintiffs have adequately alleged at the pleadings stage that the ECOS Products contain ingredients that are toxic, not safe, and harmful to the environment.

## VI.    PLAINTIFFS SUFFICIENTLY STATE A CLAIM FOR BREACH OF WARRANTIES

Defendant's arguments for dismissal of the breach of warranty claims again rehashes its arguments concerning the sufficiency of Plaintiff's allegations that the ECOS Products are not non-toxic, safer, and/or environmentally friendly, and allegations that Plaintiffs consumer protection claims fail because they suffered no injury. Dkt. 23 at 15-16. The Court should therefore deny dismissal of these claims for the same reasons set forth above. *See* Sections III., IV., and V., *supra*.

Defendant also claims that Plaintiffs' breach of implied warranty claim fails for the additional reason that Plaintiffs allege that the ECOS Products are "unfit for the ordinary purpose." Dkt. 16. But Defendant incorrectly states the law. Plaintiff's implied warranty claim is predicated on Mo. Rev. Stat. § 400.2-314(2)(f) and the U.C.C.'s provision for implied warranties of merchantability, as adopted by California, which states that merchantable goods must "conform to the promises or affirmations of fact made on the container or label if any." Mo. Rev. Stat. § 400.2-314(2)(f); U.C.C. § 2-314; FAC, ¶ 246. A plaintiff may state a claim for breach of implies warranty under any prong of Mo. Rev. Stat. § 400.2-

314(2) and U.C.C. § 2-314. *See Grantham v. Wal-Mart Stores, Inc.*, 2012 WL 12898186, at \*10-11 (W.D. Mo. Feb. 28, 2012) ("Plaintiff can prove [defendant] breached the implied warranty of merchantability by showing the [product]: (a) was not fit for the ordinary purposes for which it is used; (b) was not adequately contained, packaged, or labeled; or (c) ***did not conform to the promises or affirmations of fact made on the container or label***.") (emphasis added); *Perez v. Monster, Inc.*, 149 F. Supp. 3d 1176, 1185 (N.D. Cal. 2016) (same). Therefore, Plaintiffs need not allege or show that the Product is not "fit for the ordinary purpose" for which it is used. Here, Plaintiffs allege that the Products contained misleading representations on their labels and therefore do "not conform to the promises or affirmations of fact" made on the container or label. FAC, ¶ ¶ 245-246. That is sufficient.

## VII.   PLAINTIFFS STATE A CLAIM FOR FRAUD AND PLAINTIFFS' ALLEGATIONS ARE SUFFICIENT UNDER RULE 9(B)

Defendant's arguments for dismissal of the Plaintiffs' fraud claims rehashes its arguments that Plaintiffs have not plead a material misrepresentation because Plaintiffs fail to allege that the Products are not non-toxic, safer, and/or environmentally friendly, and that Plaintiffs consumer protection claims fail because they suffered no injury. Dkt. 23 at 17-18. The Court should therefore deny dismissal of the fraud claims for the same reasons set forth above. *See* Sections III., IV., and V., *supra*.

Defendants also contend that Plaintiffs' claims should be dismissed for failure to satisfy Rule 9(b). Dkt. 23 at 17-18. Claims based on fraudulent conduct must be accompanied by the who, what, where, when, and how of the misconduct charged. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). "[W]here the plaintiff identifies particular statements alleged to be misleading, the basis for contention, where the statements appear, and the relevant time period in which statements were used" Rule 9(b) is met. *Thornton*, 2016 WL 4073713\ at \*13-14 (citing omitted)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). As set forth below, Plaintiffs' allegations satisfy the 9(b) pleading requirement because they lay out the specific circumstances of the fraud.

- ***Who:*** Plaintiffs specifically identified Defendant Earth Friendly as the entity responsible for the misrepresentations regarding the Products. FAC, ¶¶ 4-6, 20.

- ***What:*** Plaintiffs have alleged the misleading representations with adequate detail. Plaintiffs alleged that "Earth Friendly's marketing materials are replete with statements that the Products are non-toxic, safe, and environmentally friendly" and "the labeling for the Products claims that they are 'non-toxic,' 'safer,' 'made without known carcinogens, reproductive toxins, or endocrine disruptors,' 'climate positive,' 'Earth Friendly,' and/or 'sustainable.'" *Id.* ¶¶ 38-49.

- ***When:*** "***During the Class Period***, Plaintiff[s] Lizama" and "Olsen [have] purchased ECOS Products for personal, family, or household use*...*" *Id.*, ¶¶ 16, 18. *See Thornton*, 2016 WL 4073713 at *11 (the "when" satisfied by allegation that purchases were made during the five years preceding filing of the complaint); *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012) ("requiring that Plaintiff allege specific dates on which they saw the representations is not necessary or realistic.").[11]

- ***Where:*** Plaintiffs allege the specific location where they purchased the Products. *Id.*, ¶16, ("from a Whole Foods Market in St. Louis County"); *Id.*, ¶ 18 ("from a Whole Foods Market in Pasadena, California."). Furthermore, Plaintiffs allege the locations of the deceptive representations regarding the Products. *Id.*, ¶¶ 17, 19. Plaintiffs purchased the ECOS Products because they saw the labeling, advertising, the Defendants' website, and read the packaging, which represented that the Products were as "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable." *Id. Thornton*, 2016 WL 4073713 at *11 (the "where" was "on the label of the Mix").

- ***How:*** "In an effort to increase profits and to gain an advantage over its lawfully acting competitors, Earth Friendly falsely and misleadingly markets and labels the Products as "nontoxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable." Contrary to these representations, the Products are plainly not "non-toxic," "safer," and environmentally friendly because the Products can cause harm to humans, animals, and/or the environment. This marketing and labeling deceives consumers into believing that they are receiving non-toxic, safe, and environmentally friendly Products, but Earth Friendly's Products do not live up to these claims." FAC, ¶ 6, 50-52. *Thornton*, 2016 WL 4073713 at *11 (the "how" is that the product claims to have "Nothing Artificial" but contains synthetic ingredients).

Defendant also claims that "the FAC states nothing to support fraudulent intent." Dkt. 23 at 18.

That is false. Again, the FAC specifically alleges that "consumers have become significantly more aware of and sensitive to the toxicity and impact of household products on the environment," and that [c]onsumers seek, and will pay a premium for," products that are safe and…will not negatively affect the environment." FAC, ¶¶ 2. "As a result, demand has increased for 'green' products that are non-toxic, safe, and environmentally friendly." *Id.*, ¶ 3. Because of this, "[i]n an effort to increase profits and to gain an advantage over its lawfully acting competitors, Earth Friendly falsely and misleadingly markets and labels the Products as 'nontoxic,' 'safer,' and environmentally friendly. FAC, ¶ 6. Thus,

---

[11] Despite the fact that Plaintiffs specifically allege that they purchased the Products "[d]uring the Class Period" from a "Whole Foods Market" in St. Louis County and Pasadena, California, respectively, Defendant still insists that Plaintiffs have not "sufficiently identif[ied] the date(s) or place(s) of purchase." Dkt. 23 at 18. But that is clearly contrary to Missouri and California law.

Plaintiffs have met the Rule 9(b) standard and states a claim for fraud.

## VIII.   PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT AND NEGLIGENT MISREPRESENTATION

Defendant's arguments for dismissal of the unjust enrichment and negligent misrepresentation claims again rehashes its arguments that Plaintiff's consumer protection claims fail because Plaintiffs were not deceived and got what was promised. Dkt. 23 at 16-19. The Court should therefore deny dismissal of these claims for the same reasons set forth above. *See* Sections III., IV., and V., *supra*.

Defendant also claims that Plaintiffs' unjust enrichment "claims should be dismissed because Plaintiffs' have an adequate remedy at law. Dkt. 23 at 17. But a plaintiff is entitled to bring an unjust enrichment claim as an alternative ground for relief, even if plaintiff may have an adequate remedy at law. *Thornton*, 2016 WL 4073713, at *4 (denying motion to dismiss unjust enrichment and MMPA claims, holding that the claims could be pled in the alternative); *Hawkins v. Nestle U.S.A., Inc.*, 309 F. Supp. 3d 696, 708 (E.D. Mo. Feb. 16, 2018) ("It is generally permissible to pursue alternative theories at the pleading stage, and courts generally permit unjust enrichment claims to proceed alongside a properly-pled MMPA claim."); *Sloan v. GM LLC*, 2017 WL 3283998, at *10 (N.D. Cal. Aug. 1, 2017) (under Fed. R. Civ. P. 8(d) and Ninth Circuit law, a party is permitted to assert inconsistent alternative claims for relief). Accordingly, Plaintiffs' unjust enrichment claim is adequately pled.

## IX.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF

Defendant contends that Plaintiffs lacks standing to pursue injunctive relief because "they are now aware of the ingredients and therefore could avoid any future injury." Dkt. 23 at 19.[12]  But courts in Missouri have specifically rejected Defendant's argument that once a plaintiff learns of the alleged deception, the labeling is no longer misleading and there can be no ongoing or future harm. *Bratton v. Hershey Company*, 2017 WL 2126864, at *9-10 (W.D. Mo. May 16, 2017) ("the fact that [plaintiff]

---

[12] Defendant also again claims that Plaintiffs' lack standing to seek injunctive relief because they already have an adequate remedy at law. Dkt. 23 at 19. The Court should therefore reject this argument for the same reasons set forth above. *See* Sections IV., VII., *supra*.

discovered [defendant's] allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing." Plaintiff's allegations regarding his likelihood of purchasing the products in the future if defendant was to cease its deceptive practices, were sufficient.); *Hawkins v. Nestle U.S.A. Inc.*, 2018 WL 746304, at *8 (E.D. Mo. Feb. 7, 2018) ("the fact that Plaintiff discovered Defendant's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. Plaintiff need plead nothing more to survive a motion to dismiss..."); *Parker v. Wal-Mart Stores, Inc.*, 367 F. Supp. 3d 979, 986 (E.D. Mo. 2019) (rejecting the same argument by defendant and adopting the *Hawkins* analysis); *White v. Just Born, Inc.*, 2017 WL 3130333, at *10 (W.D. Mo. Jul. 21, 2017) (court found the plaintiff pled a threat of ongoing or future harm despite plaintiff's awareness of defendant's conduct because the alleged conduct is ongoing and unlawful).

Here, regardless of Plaintiffs' current knowledge about the deception, Plaintiffs have attested that they would purchase the Products in the future if the deception was cured. FAC, ¶¶ 17, 19. Further, Plaintiff's awareness of the fraud does not halt Defendants' unlawful conduct, nor does it prohibit Defendant from deceiving other class members who are not aware of the deception. Accordingly, this Court should follow *Bratton, et. al.*, and reject Defendant's "awareness" argument, and find that Plaintiffs have standing to pursue injunctive relief. To hold otherwise would thwart the purpose of the Missouri's consumer protection law. *See Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. 2013) (the MMPA's "remedial measures are designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri citizens.").

## X.   THIS COURT SHOULD DEFER RULING ON DEFENDANT'S CHALLENGE TO STANDING

Defendant argues that the claims of class members from other states should be dismissed for lack of standing, but it ignores the widely recognized "logically antecedent" doctrine, which requires deferring ruling on standing of class members until the class certification stage of the case. Although there is no controlling decision by the Eighth Circuit, this Court has held numerous times that such a decision on standing should be deferred.

The legal dispute that is at the crux of this argument derives from *Amchem* and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), which make clear that where "class certification issues are ... 'logically antecedent' to Article III concerns...Rule 23 certification should be treated first, 'mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints....'" *Ortiz*, 527 U.S. at 831 (quoting *Amchem*, 521 U.S. at 613-613). In *Buchta*, this Court engaged in a thorough analysis of whether such a decision on standing should be deferred and held that "this issue is best addressed through the requirements of Rule 23." 2019 WL 4468943, at *4. Likewise, in *Moore*, this Court agreed with the judge's "well-reasoned analysis in *Buchta* and finds that the decision of class certification is logically antecedent to a determination of standing that can best be addressed thought the requirements of Rule 23. Consequently, the Court will defer ruling on this issue until the class certification stage." 2019 WL 4723077 at *7 (citing *Thomas v. U.S. Bank, N.D.*, 2012 WL 12897284 at *9 (W.D. Mo. Sept. 27, 2012) ("the prudent course to address these issues is at the class certification stage.")). Accordingly, the Court can and should reject Defendant's arguments on procedural grounds.

Here, Defendant does not dispute that Plaintiffs have standing to bring their individual claims for breach of warranties, unjust enrichment, negligent misrepresentation, and fraud. Instead, Defendant claims that standing is "claim-specific," and therefore Plaintiffs must demonstrate that they also have standing to bring separate "claims" under the laws of other states. But there are two problems with that argument. The first is that it does not fit within any of the traditional three elements of standing—injury, traceability, and redressability—which have never posed a high bar to justiciability anyway. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Sosna v. Iowa*, 419 U.S. 393, 403 (1974) (once a named plaintiff establishes individual standing, the examination shifts "from the elements of justiciability to the ability of the named representatives to fairly and adequately protect the interests of the class"). Plaintiffs satisfy each of those elements regardless of whether they represent out-of-state class members. Second, the "essential" issue in standing is whether the "representative parties…have a direct and substantial interest" in the "dispute." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (the

"essential" question of standing "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues"). The dispute in a false labeling case like this one is the same for Plaintiffs and out-of-state class members because Defendant's conduct was uniform and likely affected consumers in every state in a similar fashion.

Finally, the only Eighth Circuit case that Defendant cites is *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021), which is completely irrelevant because it did not involve consumer protection clams and it did not address whether a plaintiff had standing to pursue claims under the laws of other states. In *Donelson*, the court held that a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification "because not only was it apparent from the pleadings that [the plaintiff] could not certify a class but also the class allegations were all that stood in the way of compelling arbitration." *Id.* The court reasoned that "permitting such allegations to remain would prejudice the defendant" because "delaying the decision on whether [the plaintiff] could certify a class would needlessly force the parties to remain in court when they previously agreed to arbitrate." *Id.* Here, it is apparent from the pleadings that Plaintiffs could certify a national class because, again, Defendant's false and misleading representations affected consumers uniformly. And there is no prejudice to Defendant because there is no agreement to arbitrate.[13] Thus, Courts in the Eighth Circuit, including this one, typically deny as premature motions to strike class allegations filed significantly in advance of any possible motion for class certification. *E.g.*, *Moore*, 2019 WL 4723077, at *6; *Buchta*, 2019 WL 4468943, at *4.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully requests that this Court deny Defendant's Motion to Dismiss or, alternatively, grant Plaintiffs leave to amend.

---

[13] Moreover, courts within the Eighth Circuit recognize that the tactic of making a peremptory attack on class allegations as part of a motion to dismiss is disfavored and seldom, if ever, to be granted. *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir. 1977) ("The propriety of class action status can seldom be determined on the basis of the pleadings alone...")

Respectfully submitted,

Orlowsky Law, LLC


/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #57387MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs


Goffstein Law, LLC

/s/ Adam M. Goffstein
Adam M. Goffstein, #45611MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, the foregoing was filed electronically with the Clerk of Court and served via the Court's electronic filing system to all attorneys of record.


/s/Daniel J. Orlowsky