**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DELIA DE SANTIAGO LIZAMA, *on behalf of herself and all others similarly situated,* et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 4:22-CV-841 RLW |
| VENUS LABORATORIES, INC., *d/b/a Earth Friendly Products, Inc.*, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion to dismiss and strike allegations in the First Amended Complaint, filed by Defendant Venus Laboratories, Inc., doing business as Earth Friendly Products, Inc., (hereinafter "Defendant" or "Venus Laboratories"). (ECF No. 21). Venus Laboratories moves to dismiss claims brought by Plaintiff Michelle Olsen for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Venus Laboratories also moves to dismiss any claims related to products the plaintiffs did not purchase, for lack of standing. In addition, Venus Laboratories moves to dismiss the plaintiffs' claims brought under Missouri's and California's consumer protection statutes and state common law for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Finally, Defendant moves to strike the nationwide class allegations pursuant to Fed. R. Civ. P. 12(f). Plaintiffs Delia De Santiago Lizama and Michelle Olsen oppose the motion, which is fully briefed and ripe for review. For the reasons that follow, the Court grants in part and denies in part Defendant's motion to dismiss and to strike allegations in the Complaint.

## *I. Background*

Plaintiffs Lizama and Olsen allege in their First Amended Complaint (hereinafter "Complaint") that **Venus Laboratories** has misled and continues to mislead consumers into believing its products are "green," in other words, that they are safe and not harmful to the environment.   Plaintiffs contend they and other environmentally conscious consumers paid a premium price for Venus Laboratories' products based on Defendant's representations that its products are non-toxic, safe, and environmentally friendly.   According to the Complaint, however, Defendant's products contain toxic and harmful ingredients.   Plaintiffs seek to represent consumers who were allegedly misled into purchasing **Venus Laboratories**' products at premium prices under false representations that the products were non-toxic, safe, and environmentally friendly, when they are not.  **Plaintiffs Lizama and Olsen seek to bring this suit on behalf of themselves and those similarly situated.**

**Venus Laboratories** manufactures a variety of household cleaning and personal care products under the name ECOS®, which are sold in retail stores nationwide.   Plaintiff Lizama, who is a citizen of Missouri, alleges she purchased **Venus Laboratories'** products from Whole Foods Market in St. Louis County, Missouri.   More specifically, Plaintiff Lizama alleges she bought ECOS® Hypoallergenic Laundry Detergent – Lavender, ECOS® Hypoallergenic Dish Soap – Free & Clear, and ECOS® Hypoallergenic Laundry Detergent - Magnolia & Lily.   Plaintiff Olsen, who is a citizen of California, alleges she purchased **Venus Laboratories'** products from Whole Foods Market in Pasadena, California.   More specifically, Plaintiff Olsen alleges she bought ECOS® Hypoallergenic Laundry Detergent – Free & Clear.

Both Plaintiffs allege they purchased Venus Laboratories' products because they saw labeling, advertising, Defendant's website, and read the packaging, all of which represented that Venus Laboratories' products were "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable."  (ECF No. 15 at 6-8).  Plaintiffs allege they understood these representations to mean that Venus Laboratories' products were non-toxic, safe, and environmentally friendly and would not cause harm to humans, animals, and/or the environment.   Further, both Plaintiffs allege they would not have purchased Venus Laboratories' products at all or would have been willing to pay a substantially reduced price for the products, had they known that the products were toxic, harmful, dangerous, and environmentally damaging.  Plaintiffs also allege they would purchase Defendant's products in the future if Defendant changed the composition of its products so that they conformed to their "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable" packaging and labeling, or if the packages and labels were corrected and Plaintiffs could trust that they are accurate.

In their Complaint, Plaintiffs list 51 ECOS® products they contend fail to conform to Venus Laboratories' representations that its products are "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable," because the products allegedly contain toxic, harmful, dangerous, and environmentally damaging ingredients.   Plaintiffs purchased 4 of the 51 products in the list.

The Complaint also lists 38 ingredients that can be found in Defendant's products, and there are allegations purporting to show why each of the 38 ingredients are toxic, harmful, dangerous,

3

and/or environmentally damaging.   In the Complaint is a table listing the 51 ECOS® products with the allegedly toxic, harmful, dangerous, and environmentally damaging ingredients they contain. None of the 51 products contain all 38 ingredients.   Each product contains a combination of between 2 to 12 allegedly toxic, harmful, dangerous, and environmentally damaging ingredients. Plaintiffs allege they and other consumers have been unlawfully misled by Defendant's representations, because Venus Laboratories' products contain these ingredients.

In their Complaint, Plaintiffs bring 13 counts against Venus Laboratories pursuant to state law.[1]   In Counts I-V, Plaintiff Lizama asserts Defendant has violated the **Missouri Merchandising Practices Act**, Mo. Rev. Stat. §§ 401.010, et seq. ("MMPA").   In Counts VI-VIII, Plaintiff Olsen brings claims for violations of the California Unfair and Deceptive Acts and Practices Law, Cal. Bus & Prof. Codes § 17200 et seq. ("CUDAP") (Count VI); the **California Deceptive Advertising Practices Law**, Cal. Bus & Prof. Codes § 17500 et seq., ("CDAP") (Count VII); and the **California Consumers Legal Remedy Act**, Cal. Civ. Codes § 1750, et seq. ("CLRA") (Count VIII).   In Counts IX-XIII, both Plaintiffs assert common law claims for breach of express warranty (Count IX); breach of implied warranty of merchantability (Count X); unjust enrichment (Count XI); negligent misrepresentation (Count XII); and fraud (XIII).

Plaintiff Lizama seeks to bring claims on behalf of herself and a class of Missouri consumers.   Plaintiff Olsen seeks to bring claims on behalf of herself and a class of California consumers.   Both plaintiffs seek to bring common law claims on behalf of a nationwide class. Plaintiffs also ask the Court to enter an order declaring that Venus Laboratories' conduct violates

---

[1]This matter is before the Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).   **Venus Laboratories** is a Delaware corporation with its principal place of business in Illinois.   Plaintiff Lizama is a citizen of Missouri, and Plaintiff Olsen is a citizen of California.

Missouri's and California's statutory laws, as well as state common laws.   Plaintiffs seek compensatory and punitive damages, injunctive relief, and attorneys' fees.

## II.   Discussion

### A.   Motion to Dismiss for Lack of Personal Jurisdiction

Venus Laboratories moves to dismiss Defendant Olsen's claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).   Personal jurisdiction takes two forms: "'[G]eneral' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."   Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017) ("Bristol-Myers") (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)). "General jurisdiction exists where a defendant is essentially at home in the forum state, whereas specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims, namely those that arise out of or relate to the defendant's contacts with the forum."   Bros. & Sisters in Christ, LLC v. Zazzle, Inc., 42 F.4th 948, 951 (8th Cir. 2022) (cleaned up).

There are no allegations the would permit the Court to find that Venus Laboratories is subject to general personal jurisdiction in Missouri.   Venus Laboratories is a Delaware corporation headquartered in California with its principal place of business in Illinois.   Venus Laboratories has no alleged connections to Missouri.   Finding there is no general jurisdiction over Venus Laboratories in Missouri, the Court now turns to whether there is specific jurisdiction.

In Bristol-Myers, the Supreme Court found that due process did not permit the exercise of specific personal jurisdiction over nonresident consumers' products liability claims against a nonresident defendant where there was no connection to the forum state.   582 U.S. at 262.   Under

Bristol-Myers, the Court should exercise jurisdiction only if there is specific jurisdiction, that is "a connection between the forum and the specific claims at issue." Id. at 265. To exercise personal jurisdiction over Venus Laboratories in this case, each of the Plaintiffs' claims must "arise out of or relate to the defendant's contacts with the forum," and there must be an "activity or an occurrence that takes place in the forum State." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025-26 (2021) (internal quotations and emphasis omitted).

Citing to Bristol-Myers, Venus Laboratories argues specific jurisdiction does not exist for Plaintiff Olsen's claims, because she has no connection to Missouri. Venus Laboratories does not dispute that there is specific personal jurisdiction over Plaintiff Lizama's claims. Plaintiff Lizama alleges she is a citizen of Missouri and purchased Defendant Venus Laboratories' products in Missouri. Plaintiff Olsen, however, is a citizen of California and purchased Venus Laboratories' products in California. There are no allegations of any Missouri connection related to Plaintiff Olsen's claims. The Court, therefore, finds specific personal jurisdiction is lacking as to Plaintiff Olsen's claims. Further, the fact that there is specific jurisdiction over Plaintiff Lizama's claims does not confer specific personal jurisdiction over other claims with no connections to Missouri. Vallone v. CJS Sols. Grp., LLC, 9 F.4th 861, 865 (8th Cir. 2021) ("Personal jurisdiction must be determined on a claim-by-claim basis.").

Plaintiffs respond that the reasoning in Bristol-Myers does not apply to putative class actions. Citing two district court cases, Plaintiffs contend non-resident class members can proceed against a nonresident defendant with claims unrelated to the forum state. Moore v. Compass Grp. USA, Inc., No. 4:18-CV-1962 RLW, 2019 WL 4723077 (E.D. Mo. Sept. 26, 2019), Swinter Grp., Inc. v. Serv. of Process Agents, Inc., No. 4:17-CV-2759 RLW, 2019 WL 266299 (E.D. Mo. Jan.

6

18, 2019).   In other words, Plaintiffs argue that because this is a proposed class action, the Court

need not find that each of the Plaintiffs' claims arise out of or relate to Venus Laboratories' contact

with Missouri for there to be personal jurisdiction over these Plaintiffs' claims.

While the Supreme Court did not address whether its holding in Bristol-Myers applies to

class actions, the Court does not find Plaintiffs' argument to be persuasive.   First, the two cases

Plaintiffs cite in support of their argument address whether Bristol-Myers applies to claims of

absent class members, not named plaintiffs in a proposed class action.   See Moore, 2019 WL

4723077 (declining to apply Bristol-Myers to unnamed members of class), Swinter Group, Inc.,

2019 WL 266299 (same).   As a result, these decisions are readily distinguishable.

Second, "[t]he overwhelming majority of federal courts have held that Bristol-Myers applies

to claims brought by named plaintiffs in class actions," Sloan v. General Motors LLC, No. 16-CV-

7244, 2019 WL 6612221, at *9 (N.D. Cal. Dec. 5, 2019), including a very recent case from this

District.   See Lizama v. H&M Hennes & Mauritz LP, No. 4:22-CV-1170 RWS, 2023 WL

3433957, at *2 (E.D. Mo. May 12, 2023) (dismissing all claims brought by out-of-state named class

action plaintiff against out-of-state defendant for lack of personal jurisdiction).   See also

Bakopoulos v. Mars Petcare US, Inc., No. 20 CV 6841, 2021 WL 2915215, at *4 (N.D. Ill. July 12,

2021) (in class action, named plaintiffs must demonstrate personal jurisdiction over defendant for

each of their claims); Lewis v. Mercedes-Benz USA, LLC, 530 F. Supp. 3d 1183 (S.D. Fla. 2021)

(same); Szewczyk v. United Parcel Serv., Inc., No. CV 19-1109, 2019 WL 5423036, at *8 (E.D.

Pa. Oct. 22, 2019) (finding the court must have personal jurisdiction to adjudicate named plaintiffs'

claims against the defendant "just as in any individual case"); Chernus v. Logitech, Inc., No. CV

17-673, 2019 WL 5423036 (D.N.J. Apr. 27, 2018) (same); Morrison v. Ross Stores, Inc., No. 18-

CV-02671, 2018 WL 5982006, at *4 (N.D. Cal. Nov. 14, 2018) ("The requirement to establish personal jurisdiction [in a class action] must be met as to each named plaintiff's claim, with respect to each defendant individually"); Chufen Chen v. Dunkin' Brands, Inc., No. 17-CV-3808, 2018 WL 9346682, at *6 (E.D.N.Y. Sept. 17, 2018), aff'd, 954 F.3d 492 (2d Cir. 2020) (holding that Bristol-Myers applies to named plaintiffs in the class action context); Gaines v. Gen. Motors, LLC, No. 17CV1351, 2018 WL 3752336, at *3 (S.D. Cal. Aug. 7, 2018) ("The Court agrees with the many other federal courts that have found no reason Bristol-Myers' limitation on personal jurisdiction would not apply to named parties in putative class actions."); In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig., No. 16-CV-6391, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (holding that Bristol-Myers applies to named Plaintiffs in the class action context); Greene v. Mizuho Bank, Ltd., 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017) ("Nothing in Bristol Myers suggests that it does not apply to named plaintiffs in a putative class action.").

Finally, the Eighth Circuit has applied Bristol Myers in the context of a collective action under the Fair Labor Standards Act, and there is no reason to believe it would not apply the same reasoning to a case brought by plaintiffs seeking to represent a class under Fed. R. Civ. P. 23. Vallone, 9 F.4th at 865 (finding Bristol-Myers applies to FLSA suit, and the district court "properly excluded [FLSA opt-in] claims with no connection to" the forum state).   Plaintiffs fail to identify a case where a court has held that Bristol-Myers does not apply to a named plaintiff seeking to represent members of a class pursuant to Fed. R. Civ. P. 23.   Venus Laboratories' motion to dismiss Defendant Michelle Olsen's claims for lack of personal jurisdiction is granted.

**B.      Motion to Dismiss for Lack of Standing**

Venus Laboratories argues the plaintiffs lack standing to bring claims related to products they did not purchase.   In the Complaint, Plaintiff Lizama alleges she purchased two different types of laundry detergents and one dish soap, but seeks to bring claims on behalf of members of a class concerning over 50 products as varied as toilet bowl cleaner and pet shampoo.   Citing <u>Kelly v. Cape Cod Potato Chip Co.</u>, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015), Venus Laboratories seeks to limit Plaintiff Lizama to claims related to the exact products she purchased.   In her Response Memorandum, Plaintiff Lizama argues that under applicable law, she is allowed to represent others who purchased products that are substantially similar to the ones she purchased.   Venus Laboratories argues in reply that Plaintiff Lizama lacks standing even under her proposed approach, because the products at issue here are so dissimilar.

District courts within Missouri are split as to whether a plaintiff may assert claims on behalf of a class that relate to products the named plaintiff did not personally purchase.   In <u>Kelly</u>, the plaintiff sought to represent consumers who had purchased 16 varieties of potato chips.   81 F. Supp. 3d at 763.   Finding the plaintiff "was neither personally nor actually harmed as to those twelve varieties," the district court limited the plaintiff's claims on standing grounds to the four varieties she had purchased.   <u>Id.</u>   Other courts have reached similar conclusions.   <u>See</u>, <u>e.g.</u>, <u>Drew v. Lance Camper Mfg. Corp.</u>, No. 3:21-CV-5066, 2021 WL 5441512, at *7 (W.D. Mo. Nov. 19, 2021) (plaintiff does not have standing to assert claims with respect to products the plaintiff did not himself purchase); <u>Smith v. Atkins Nutritionals, Inc.</u>, No. 2:18-CV-4004, 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018) (same).

Not all courts, however, are so rigid.   Courts applying the "substantially similar" test find that the "overarching question" for standing is whether the named plaintiff's injury is substantially similar to "the claims of those [he] seeks to represent."   Browning v. Anheuser-Busch, LLC, 539 F. Supp. 3d 965, 977 (W.D. Mo. 2021) (cleaned up).   Applying this test, courts consider whether the products at issue and the "operative facts that give rise to the putative class representative['s] and the putative class's claims" are similar.   Id. (cleaned up).

In Goldman v. Tapestry, Inc., 501 F. Supp. 3d 662, 667 (E.D. Mo. 2020), for example, the plaintiff challenged the discount pricing practices at an outlet store.   The defendant argued, based on standing, that as a matter of law the plaintiff's claims should be limited to the nine items she actually purchased.   The district court did not agree.   The district court noted that the plaintiff was alleging she was harmed by the defendant's discount pricing scheme, not the products themselves. Id. at 667.   The district court found that the pricing scheme applied to products the plaintiff purchased, as well as to those she did not purchase but which members of the proposed putative class had.   The district court concluded the plaintiff had standing to assert claims on behalf of a class as to products she did not purchase, "as long as the products and alleged misrepresentations are substantially similar." Id. (quotation and citations omitted).

The Court agrees with courts finding the "substantially similar" approach to be the appropriate test for standing in a proposed class action and will apply it here.   The issue, therefore, is whether the products Plaintiff Lizama actually purchased and Venus Laboratories' alleged misrepresentations about these purchased products are substantially similar to other products included in the Complaint and alleged misrepresentations Venus Laboratories made about them.

Plaintiff Lizama seeks to represent class members who have purchased more than 50 products manufactured by Venus Laboratories.   The Court has reviewed the list of products and concurs with Defendant that many of the products are very dissimilar.   In addition to laundry detergents and dish soaps, products Plaintiff Lizama purchased, there are all-purpose cleaners, a cream cleanser, a fruit and vegetable wash, furniture polish, a shower cleaner, a stain and odor remover, a stainless steel cleaner, a toilet cleaner, a window cleaner, a grooming spray, a kitty litter deodorizer, hand soaps, pet shampoo, pet stain and odor remover, dishwasher gel, dishwasher packs, rinse aid, odor eliminator, baby bottle and dish wash, baby stain and odor remover, and a baby toy and table cleaner.   These products have very different uses and serve various purposes. For example, some are designed to come in contact with skin or are used in food preparation, while others are strictly household cleaners.   In addition, Plaintiff Lizama lists the ingredients in each of these products, and it does not appear that any of the products have the same ingredients, although there is some overlap in ingredients, especially within categories of products, such as laundry detergents.

Plaintiff Lizama argues it is of no import that she did not purchase each and every Venus Laboratory product identified in the Complaint, because the misrepresentations on the labeling of those products are substantially similar to the ones Plaintiff Lizama purchased.   Defendant responds that Plaintiff's assertions are factually incorrect because not only are the products very different, but also they have different labels, each with different statements.   In support of its motion, Defendant attaches the labels from 2 out of the 51 products.

Even if the Court were to consider the exhibits as Defendant urges the Court to do, the exhibits show labels for only two products – a fruit and veggie wash and a window cleaner.   And

11

neither of products is within a category of the products Plaintiff Lizama did purchase – laundry detergent or dish soap.

Based on the allegations in the Complaint and without a more complete record, the Court finds Plaintiff adequately alleges facts showing that some of the products she did not purchase are substantially similar to those she did, and the misrepresentations made about these products are also substantially similar.   The Court finds, based on the allegations in the Complaint, that Plaintiff Lizama has standing to bring claims on behalf of unnamed class members related to ECOS® laundry detergents and dish soaps, even the varieties she did not purchase.   See Browning, 539 F. Supp. 3d at 977 (finding plaintiff has standing to pursue claims on behalf of members of a proposed class for varieties of a beverage that were substantially similar to the variety she did purchase). The Court grants Venus Laboratories' motion to dismiss for lack of standing as to all other products listed in the Complaint.

### C.      Motion to Dismiss for Failure to State a Claim

Venus Laboratories moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), all claims Plaintiff Lizama is asserting against it for failure to state a claim.   In its motion, Venus Laboratories makes the following arguments: (1) Plaintiff Lizama fails to allege ascertainable loss under the MMPA; (2) Plaintiff Lizama fails to plead a violation under the MMPA; (3) Plaintiff Lizama fails to plead the required elements to state claims for breaches of warranties; (4) Plaintiff Lizama's unjust enrichment claim fails to state a claim because she has an adequate remedy at law; (5) Plaintiff Lizama fails to state a claim for negligent misrepresentation because she has not pleaded a misrepresentation, justifiable reliance, damages, or a special relationship; and (6) Plaintiff

Lizama's fraud claim does not meet the heightened pleading standard of Fed. R. Civ. P. 9(b). Defendant also argues Plaintiff Lizama is not entitled to injunctive relief.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level."   Twombly, 550 U.S. at 555.   A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.   Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.   Id. at 555–56; Fed. R. Civ. P. 8(a)(2).   The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

A claim sounding in fraud is subject to a heightened pleading standard, and the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

13

To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (quoted case omitted).

### 1.    *Missouri Merchandising Practices Act*

Venus Laboratories moves to dismiss Plaintiff's claims asserting violations of the MMPA. The MMPA was enacted to protect Missouri consumers from fraudulent business practices.   State ex rel. Nixon v. Telco Directory Pub., 863 S.W.2d 596, 601 (Mo. 1993) (en banc); State v. Polley, 2 S.W.3d 887, 892 (Mo. Ct. App. 1999).   The MMPA permits civil claims by "[a]ny person who purchases ... merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 ...." Mo. Rev. Stat. § 407.025.   See also Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 773 (Mo. 2007) (en banc).   Section 407.020 bars a variety of conduct, including "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact . . .."   Mo. Rev. Stat. § 407.020.

In 2020, the MMPA was amended to provide that "[a] person seeking to recover damages shall establish" the following:

(a) That the person acted as a reasonable consumer would in light of all circumstances;

(b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and

14

(c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

Mo. Rev. Stat. § 407.025.   The following language was also added to the statute: "A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."   Id.

In her Complaint, Plaintiff Lizama asserts five separate counts under the MMPA for the following five alleged types of unfair practices: deception (Count I), misrepresentation (Count II), concealment or omission (Count III), half-truth (Count IV), and offense of public policy (Count V).[2]

### a.   Ascertainable loss

Venus Laboratories argues Plaintiff Lizama's MMPA claims fail because she does not allege facts showing any actual loss.   To state a claim under the MMPA, Plaintiff Lizama must allege she suffered an "ascertainable loss of money or property."   Mo. Rev. Stat. § 407.025. Courts in Missouri have interpreted the "ascertained loss" element "as incorporating Missouri's long-standing 'benefit of the bargain' common law fraud remedy." Vitello v. Natrol, LLC, 50 F.4th 689, 693 (8th Cir. 2022) (citing Sunset Pools of St. Louis, Inc. v. Schaefer, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994)).   "The 'benefit of the bargain' rule awards a prevailing party the difference

---

[2]The regulations under the MMPA define "deception" as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 C.S.R. § 60-9.020.   A misrepresentation is "an assertion that is not in accord with the facts." 15 C.S.R. § 60-9.070. An omission requires scienter and is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."   15 C.S.R. § 60-9.110(3); Hope v. Nissan N. Am., Inc., 353 S.W.3d 68, 84 (Mo. Ct. App. 2011) ("a greater showing of bad faith or recklessness is required [for an omission] than for the claims based on alleged affirmative representations.").   Finally, a half-truth is an omission of "a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading." 15 C.S.R. § 60-9.090.

between the value of the product as represented and the actual value of the product as received." Thompson v. Allergan USA, Inc., 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).   The benefit-of-the-bargain rule permits recovery when a product is worth less in actuality than as represented. See Browning, 539 F. Supp. 3d at 972 ("a plaintiff adequately pleads if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction.") (quotation omitted).

Venus Laboratories argues Plaintiff Lizama has not plausibly alleged how the supposedly unlawful statements it made, or failed to make, impacted the price of the products she purchased. Defendant contends that the allegation the products Plaintiff Lizama purchased were worth less than the products she thought she had purchased is merely a conclusion, which is not enough under Iqbal.   556 U.S. at 679.   Venus Laboratories further argues that Plaintiff Lizama received the laundry detergents and dish soap she purchased, they served their intended purposes, and the Complaint fails to allege any facts that would establish the price of the products would change if different labels were attached.

In the Complaint, Plaintiff Lizama alleges she purchased three of Venus Laboratories' products: ECOS® Hypoallergenic Laundry Detergent – Lavender, ECOS® Hypoallergenic Laundry Detergent – Magnolia & Lily, and ECOS® Hypoallergenic Dish Soap – Free & Clear. She alleges that she paid more for these products because, based on Venus Laboratories' statements and representations, she believed they were non-toxic and not harmful to the environment.   The Complaint further alleges that there is a demand for green products, and "[c]onsumers seek, and will pay a premium for, products that are safe and responsibly made, including products that will not negatively affect the environment."   (ECF No. 1 at 2).   According to the Complaint, "Plaintiff

16

Lizama suffered economic damages, in that the products she [ ] purchased were worth less than the products [she] thought [she] had purchased had Defendant's representations been true," because she paid a "premium price above comparable alternatives that are not represented to be non-toxic, safe, and environmentally-friendly."  (Id. at 40, 48).  The Complaint further alleges: "Plaintiff Lizama [ ] lost money or property as a result of Defendant's violations because: (a) [she] would not have purchased the Products on the same terms if [she] knew that the Products were not non-toxic, safe, and environmentally friendly; (b) [she] paid a substantial price premium compared to other household cleaning products due to Defendant's misrepresentations and deceptions; and (c) the Products do not have the characteristics, uses, or benefits as promised."  (Id. at 49).

The Court finds Plaintiff sufficiently alleges an ascertainable loss under the benefit of the bargain rule.  Plaintiff alleges consumers like herself pay more money for environmentally friendly, non-toxic household products such as laundry detergents and dish soap; she paid a premium price for Defendant's products because she reasonably but mistakenly believed they were non-toxic based on Defendant's statements; but the products she purchased and received were not non-toxic and, therefore, their value was less than what she paid.   Plaintiff has sufficiently alleged an ascertainable loss under the MMPA.  See Boone v. PepsiCo, Inc., No. 4:22-CV-108-AGF, 2023 WL 1070293, at *5 (E.D. Mo. Jan. 27, 2023) (allegations that the plaintiff overpaid for the defendant's product, in that the fair market value product was actually lower than the price paid, was sufficient to state damages under MMPA based on benefit-of-the-bargain rule); May v. Makita U.S.A., Inc., No. 1:22-CV-79-SNLJ, 2023 WL 417487, at *5 (E.D. Mo. Jan. 26, 2023) (same); Murphy v. Stonewall Kitchen, LLC, 503 S.W.3d 308, 313 (Mo. Ct. App. 2016) (same).

Venus Laboratories responds that the MMPA was amended in 2020 and, therefore, earlier case law no longer applies.   Defendant contends Plaintiff's allegations regarding damages do not meet the stricter pleadings requirements under the 2020 amendments, which provide that a plaintiff must establish "[i]ndividual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty."   Mo. Rev. Stat. § 407.025.1(2)(c).

Venus Laboratories does not provide the Court with any authority applying the 2020 amendment to a motion to dismiss, and the Court has found none.   Based on the plain language of the statute, the Court finds the 2020 amendment does not raise the pleading standard for alleging damages under the MMPA.   The 2020 amendment requires a plaintiff to "<u>establish</u>" damages by "sufficiently definitive and objective <u>evidence</u>."   Mo. Rev. Stat. § 407.025.1(2)(c) (emphasis added).   The query on a motion to dismiss is not whether the plaintiff has established her claim with evidence, but whether she has alleged sufficient facts to state a plausible claim.   <u>Twombly</u>, 550 U.S. at 555; <u>Blomker</u>, 831 F.3d at 1055.   See also <u>Whitney v. Guys, Inc.</u>, 700 F.3d 1118, 1128 (8th Cir. 2012) ("We refuse . . . to incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of <u>Iqbal</u> and <u>Twombly</u>.").   The Court declines to find that the 2020 amendment requires a heightened pleadings standard for damages under the MMPA, such that Plaintiff must set forth objective evidence to state a claim.   The statute's plain language indicates that it applies later in the proceeding, for example, at trial or on a motion for summary judgment.

In sum, the 2020 amendment to the MMPA does not impose a stricter pleading standard as to damages, and Defendant fails to show the benefit of the bargain rule no longer applies.   Plaintiff Lizama's Complaint adequately alleges ascertainable loss under the benefit of the bargain rule, and

Defendant Venus Laboratories is not entitled to dismissal of the MMPA claims based on its argument that Plaintiff fails to sufficiently "establish" damages with evidence.

b.   <u>Reasonable consumer</u>

Plaintiff Lizama alleges in her Complaint that Venus Laboratories represented the products she purchased were "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disputers," "climate positive," "Earth Friendly," and "sustainable" when the products were not.   Venus Laboratories argues that dismissal of Plaintiff Lizama's MMPA claims is warranted because no "reasonable consumer" under the circumstances would have been misled by the challenged statements because all of the ingredients in the products at issue were clearly and accurately disclosed on the label, "undoing any claim of deception."   (ECF No. 20 at 10). Defendant contends the label disclosures are "fatal" to Plaintiff Lizama's MMPA claims.   (<u>Id.</u>).

Plaintiff responds by citing to <u>Thornton v. Pinnacle Foods Group LLC</u>, No. 4:16-CV-158 JAR, 2016 WL 4073713, at *2 (E.D. Mo. Aug. 1, 2016), and <u>Murphy v. Stonewall Kitchen</u>, 503 S.W.3d 308, and argues that "[a] reasonable consumer's interpretation of a labeling claim is not something that can be determined at the motion to dismiss stage."   (ECF No. 26 at 11).   She urges the Court to deny Defendant's Motion to Dismiss her MMPA claims on this basis.

In <u>Murphy v. Stonewall Kitchen</u>, the Missouri Court of Appeals rejected the ingredients list defense as a matter of law.   503 S.W.3d at 312.   In that case, the plaintiff alleged that the defendant had violated the MMPA by advertising on its label that its cupcake mix was "all natural" when it contained sodium acid pyrophosphate.   <u>Id.</u> at 310.   The defendant filed a motion to dismiss, arguing it was not plausible that a consumer would believe the "all natural" representation, because the ingredient label clearly disclosed all the ingredients in the product.   In rejecting the defendant's

19

argument, the court in <u>Murphy</u> stated that the Food and Drug Administration "does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception."   503 S.W.3d at 312.   The court held, "[w]hile the presence of an ingredient list may be relevant to [the defendant]'s defense at trial, the 'ingredient list' defense cannot, as a matter of law, defeat an MMPA claim."   <u>Id.</u>   The Court of Appeals concluded the plaintiff had stated a claim under the MMPA because use of the term "all natural" could be understood by an ordinary consumer to mean the cupcake mix did not contain artificial or synthetic ingredients, which it allegedly did. <u>Id.</u>   In its analysis, the <u>Murphy</u> court noted that whether a reasonable consumer would be deceived by a product label is generally a question of fact that is not to be decided on a motion to dismiss. <u>Murphy</u>, 503 S.W.3d at 312.   A number of courts have cited to <u>Murphy</u> when denying motions to dismiss.   <u>See</u> <u>Thornton</u>, 2016 WL 4073713, at *3; <u>York v. Andalou Nats., Inc.</u>, No. 16-CV-894, 2016 WL 7157555, at *4 (S.D. Ill. Dec. 8, 2016).

In its Reply Memorandum, Venus Laboratories argues that Plaintiff fails to address the new 2020 amendment, which provides, "A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."   Mo. Rev. Stat. § 407.025.1.   According to Defendant, this amendment abrogates prior case law and heightens the pleading standard to allow early dismissal of claims that fail to show a likelihood of misleading a reasonable consumer.   Defendant admits there is little case law interpreting the recent amendments and, in fact, cites to none.   Venus Laboratories urges the Court to ignore prior case law arguing, "the only light pre-amendment caselaw sheds is by revealing what problems the legislature was trying to avoid," and argues because all of ingredients

were clearly and accurately listed on Defendant's packaging, Plaintiff fails to state a claim under the MMPA.   (ECF No. 27 at 4).

The Court agrees with Defendant that under the 2020 amendment a court may make a legal determination as to whether a defendant's conduct was likely to mislead a reasonable consumer, and such determination can be made on based on allegations when evaluating a motion to dismiss. However, the Court does not agree with Venus Laboratories that the 2020 amendment establishes an ingredient list defense.

Without citing any authority, Venus Laboratories asserts, "[t]he label disclosures are fatal to [Plaintiff] Lizama's claims: the ingredients are accurately listed, undoing any claim of an MMPA prohibited practice." (ECF No. 20 at 11).   Defendant appears to be arguing that a manufacturer can make any claim or statement on a label, no matter how outrageous or untrue, and a finding that such statement was likely to mislead a reasonable consumer would be precluded if the package's list of ingredients was accurate.   How far does Defendant's interpretation of the recent amendment go? If the ingredients list is accurate, would it be lawful for a manufacture to label crackers "gluten free" when they contain wheat or to label sausage "kosher" when the product contains pork?   The stated purpose of the MMPA is to protect consumers from fraudulent business practices.   Even under the recent amendments, the Court finds that an accurate ingredients list does not invalidate the need to protect consumers from deceptive, misleading, and false labeling.   The Court declines to adopt Venus Laboratories' interpretation of the 2020 amendment and apply the ingredients list defense.

The Court now turns to whether Plaintiff Lizama adequately alleges that Venus Laboratories' conduct was likely to mislead a reasonable consumer.   Plaintiff alleges Defendant

made statements about the products she purchased, such as that they were "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disputers," "climate positive," "Earth Friendly," and "sustainable," when the products were not.   "Based on these 'non-toxic', 'safer', and environmentally friendly representations, reasonable consumers, including Plaintiff, believe that [Venus Laboratories' p]roducts do not pose any risks to humans, animals and/or the environment."  (ECF No. 1 at 19).

Plaintiff alleges that despite Defendant's labeling and marketing representations, the products do contain toxic, harmful, dangerous, and environmentally damaging ingredients, which "at their given concentration in the [p]roducts, can cause harm to humans, animals, and/or the environment."  (ECF No. 15 at 19-20).   More specifically, Plaintiff Lizama alleges the ECOS® products she purchased contained Cocamidopropyl Betaine, Cocamidopropylamine Oxide, Ethylhexylglycerin, Lauramine Oxide, Methylisothiazolinone, Phenoxyethanol, and Sodium Coco-Sulfate, which she alleges are harmful and toxic.   For example, Methylisothiazolinone, Phenoxyethanol and Sodium Coco-Sulfate are alleged to be "highly toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses."  (ECF No. 15 at 25, 27-28).

Defendant contends these factual allegations are not enough.   Citing to a case from New York, Defendant argues that the Court must dismiss the MMPA claims because Plaintiff Lizama does not allege the actual concentrations of the supposedly toxic ingredients in the products she purchased.   Rivera v. S.C. Johnson & Son, Inc., No. 20-CV-3588, 2021 WL 4392300, at *5 (S.D.N.Y. Sept. 24, 2021) (dismissing consumer claims because the plaintiffs "do not know the actual concentrations of the ingredients in the products.").   The Court finds this case is neither

22

controlling nor persuasive.   The statute involved was not the MMPA, and the Court has found no case law holding a plaintiff must allege the exact concentration of an ingredient in a product to state a claim under the MMPA.

In support of its argument, Defendant also discusses the safety of 2 of the 38 ingredients listed in the Complaint: acetic acid, also known as vinegar, and denatured alcohol.   Defendant attempts to use these two ingredients to explain how concentration levels matter.   Defendant argues that at the levels found in its products, and in light of stated purpose of the products in which these two ingredients are found, acetic acid and denatured alcohol are safe and not harmful.   Defendant's argument is not persuasive because these two ingredients are not found in the products Plaintiff Lizama purchased, or even in other ECOS® laundry detergents and dish soaps she did not purchase. Furthermore, Defendant does not address the allegedly toxic ingredients found in the products Plaintiff did purchase, such as Methylisothiazolinone, Phenoxyethanol, and Sodium Coco-Sulfate, which Plaintiff alleges are toxic at any level.   Based on the allegations in the Complaint, the Court finds Plaintiff has sufficiently alleged that a reasonable consumer likely would be misled by Defendant's representations that ECOS® laundry detergents and dish soaps are "non-toxic."   Mo. Rev. Stat. § 407.025.

As for other statements Defendant made about its products, the Court declines to decide at this time whether Defendant's other alleged misrepresentations about its laundry detergents and dish soaps were likely to mislead a reasonable consumer in violation of the MMPA.   Defendant's arguments regarding other alleged misrepresentations are underdeveloped, conclusory, and perfunctory.   Defendant fails to provide sufficient analysis of relevant law for the Court to decide whether Plaintiff states a claim under the MMPA with regard to these statements. Wilson v. Int'l

Bus. Machines Corp., 62 F.3d 237, 240 (8th Cir. 1995) (vague and conclusory arguments not properly before the court).

In sum, the Court denies Venus Laboratories' motion to dismiss based on its argument that the Complaint fails to adequately allege Defendant's representations about its products are likely to mislead a reasonable consumer.   The Court finds Plaintiff Lizama states a claim under the MMPA as she has sufficiently alleged that a reasonable consumer is likely to be misled when the label on Defendant's product states that the product is "non-toxic," but it contains ingredients that are alleged to be toxic at the given concentration found in the purchased product.

### 2.    Breach of express warranty

Venus Laboratories moves to dismiss Plaintiff Lizama's claim for breach of express warranty under Missouri law.[3]   To state a breach of express warranty in Missouri, a plaintiff must establish: (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement was a fact that was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely manner.   Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 122 (Mo. 2010) (en banc).   An express warranty is created when "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Wilson v. Marquette Elecs., Inc., 630 F.2d 575, 579 (8th Cir. 1980); Hays v. Nissan N. Am. Inc., 297 F. Supp. 3d 958, 961 (W.D. Mo. 2017).

---

[3]Both sides agree that Missouri law applies to Plaintiff Lizama's common law claims.

Venus Laboratories argues Plaintiff Lizama's breach of express warranty claim necessarily fails for the same reasons that her MMPA claims fail – it neither adequately pleads a misrepresentation nor damages.   Defendant provides no additional analysis or case law in support of its argument.   For the reasons set forth above, Defendant's motion to dismiss Plaintiff Lizama's claim for breach of express warranty is denied.

3.      *Breach of implied warranty*

Venus Laboratories also moves to dismiss Plaintiff Lizama's claim for breach of implied warranty under Missouri law.   To state a claim for breach of implied warranty in Missouri, a plaintiff must allege "'(1) that a merchant sold goods, (2) which were not merchantable at the time of the sale, (3) injury and damages to plaintiff or his property, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury.'"   Hope v. Nissan N. Am., Inc., 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) (quoting Ragland Mills, Inc. v. Gen. Motors Corp., 763 S.W.2d 357, 360 (Mo. Ct. App. 1989)).

In addition to its arguments that the Complaint does not sufficiently allege a misrepresentation or damages – arguments the Court rejects – Venus Laboratories argues Plaintiff Lizama fails to allege the products she purchased were not merchantable.   Defendant argues "merchantable" means "fit for the ordinary purpose for which such goods are used," which in this case is household cleaning.   (ECF No. 23).   Because the Complaint does not allege Defendant's product are not fit for household cleaning, Venus Laboratories argues that Plaintiff Lizama's breach of implied warranty claim must fail.   In support of its argument under Missouri law, Defendant cites to Dack v. Volkswagen Grp. of Am., 565 F. Supp. 3d 1135, 1148 (W.D. Mo. 2021) (citing Mo. Rev. Stat. § 400.2-314(2)(c)).

In response to Defendant's Motion to Dismiss, Plaintiff Lizama argues that her breach of implied warranty is based on the definition of "merchantable" found in Mo. Rev. Stat. § 400.2-314(2)(f).   Missouri has adopted a version of the Uniform Commercial Code that sets forth what is required for goods to be "merchantable."   Mo. Rev. Stat. § 400.2-314.   In addition to being "fit for the ordinary purposes for which such goods are used," § 400.2-314(c), Missouri defines "merchantable" to mean   products "conform to the promises or affirmations of fact made on the container or label[.]" § 400.2-314(2)(f).   Courts have relied on this subsection in the context of a breach of implied warranty claim and held that a plaintiff states a claim for breach of implied warranty by showing that the product is not fit for the ordinary purposes for which it is used, or that the product did not conform to the promises or affirmations of fact made on the container or label. See Boone, 2023 WL 1070293, at *11; Browning, 539 F. Supp. 3d at 977; Grantham v. Wal-Mart Stores, Inc., No. 08-3466-CV-S, 2012 WL 12898186, at *3 (W.D. Mo. Feb. 28, 2012).   Here, Plaintiff alleges that Defendant's products did not conform to promises or affirmations of fact made on the container or label, such as that the products are "non-toxic."   The Court finds the Complaint states a claim for the breach of implied warranty under Missouri law, and Defendant's Motion to Dismiss is denied with regard to this claim.

### 4.   Unjust enrichment

Defendant also moves to dismiss Plaintiff Lizama's claim of unjust enrichment under Missouri law.   Unjust enrichment has three elements under Missouri law: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances."   Binkley v. Am. Equity Mortg., Inc., 447 S.W.3d 194, 199 (Mo. 2014) (en banc) (quotation omitted).   "An unjust

26

enrichment has occurred where a benefit was conferred upon a person in circumstances in which retention of the benefit, without paying its reasonable value, would be unjust."  S & J, Inc. v. McLoud & Co., 108 S.W.3d 765, 768 (Mo. Ct. App. 2003).

Venus Laboratories argues the Court should dismiss Plaintiff Lizama's unjust enrichment claim because it is premised on the same supposedly flawed allegations as her other consumer protection claims.   In other words, Defendant argues because Plaintiff's allegations are insufficient to state claims under the MMPA and for breaches of warranties, her allegations of unjust enrichment must also fail.   As discussed above, the Court finds Plaintiff has sufficiently alleged claims under MMPA and for breaches of warranties.   The Court declines to dismiss the unjust enrichment claim on this ground.

Defendant also aruges the unjust enrichment claim, which is a claim in equity, should be dismissed because Plaintiff Lizama would have an adequate remedy at law.   Unjust enrichment is "an equitable remedy based on the concept of a quasi-contract." Affordable Communities of Mo. v. Fed. Nat. Mortg. Ass'n, 714 F.3d 1069, 1077 (8th Cir. 2013).   Missouri courts have found that a judgment in favor of a party on both a legal claim, such as contract, and an unjust enrichment claim would constitute a double recovery.   See, e.g., MECO Sys., Inc. v. Dancing Bear Ent., Inc., 42 S.W.3d 794, 810–11 (Mo. Ct. App. 2001) (where court entered judgment for plaintiff on contract claims, it properly denied plaintiff's unjust enrichment claims to avoid a double recovery, where plaintiff did not elect its remedy and submitted both claims).   But at the pleading stage, it is generally permissible to pursue alternative theories for recovery.   Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").   Plaintiff may plead her unjust enrichment claim in the alternative until it is determined whether she has an

27

adequate remedy at law.   Thus, Venus Laboratories' motion to dismiss Plaintiff Lizama's unjust enrichment claim is denied.

### 5.   *Negligent misrepresentation*

Defendant also moves to dismiss Plaintiff Lizama's claim of negligent misrepresentation. Under Missouri law, a negligent misrepresentation claim has five elements: "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." Renaissance Leasing, LLC, 322 S.W.3d at 134 (citation omitted).

Defendant again argues that Plaintiff Lizama did not suffer any pecuniary loss or damages, an argument the Court rejected in the preceding sections.   Defendant also contends, without citing any authority, that Plaintiff "cannot read just half of a label and claim negligent misrepresentation" and, therefore, "Defendant's label claims here cannot be said to be 'false,' nor can Plaintiff be said to have justifiably relied on such information."   (ECF No. 23).   Defendant asserts that Plaintiff's negligent misrepresentation claim fails for the same reason her consumer protection claims fail. As discussed above, Plaintiff Lizama sufficiently alleges consumer protection claims, and the Court finds Defendant fails to demonstrate that the Complaint does not state a claim for negligent misrepresentation.

### 6.   *Fraud*

Defendant moves to dismiss Plaintiff Lizama's claim for common law fraud under Missouri law.   To state a claim for fraud under Missouri law, a plaintiff must allege "(1) a representation;

(2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." Glenn v. Dalco Indus., Inc., No. 4:20-CV-1741-SNLJ, 2021 WL 1338537, at *2 (E.D. Mo. Apr. 9, 2021).   A fraud claim must satisfy the particularity requirements of Rule 9(b), which means that in order to properly allege fraud with sufficient particularity, a plaintiff must state the "who, what, where, when, and how" of the alleged fraud. BJC Health Sys., 478 F.3d at 917.

Defendant argues Plaintiff Lizama's fraud claim fails because she does not adequately allege a material misrepresentation or that she was injured as a result.   The Court does not agree. As discussed above, Plaintiff has alleged Venus Laboratories made material misrepresentations about the products she purchased, and that she was damaged by the misrepresentations.

Defendant further argues that Plaintiff Lizama has not alleged with specificity when and where she saw the allegedly deceptive misrepresentations.   Plaintiff Lizama responds that she saw Venus Laboratories' misrepresentations when she purchased the products at Whole Food Market in St. Louis County, Missouri.   Without citing any case law or other authority, Defendant states in its Reply Memorandum that to satisfy Rule 9(b)'s particularity requirement, Plaintiff Lizama must allege the specific dates when she purchased the products and the name of the specific store where the purchases were made.   The Court does not agree and finds Plaintiff Lizama has met Rule 9(b)'s particularity requirement with regard to the when and where, and does not need to allege the exact date she purchased the products or the address of the specific store.

Finally, Defendant Venus argues Plaintiff Lizama fails to allege that it had any fraudulent intent.   Under Fed. R. Civ. P. 9(b), "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Plaintiff Lizama alleges Defendant "willfully, falsely, and knowingly provided [Plaintiff] with false or misleading material information about [its p]roducts and failed to disclose material facts about [its p]roducts, including but not limited to the fact that [its p]roducts are not non-toxic, safe, and/or environmentally friendly."   (ECF No. 15 at 76). Plaintiff Lizama further alleges consumers have become more environmentally conscious and are willing to pay a premium for products that are safe and will not negatively affect the environment, and that "in an effort to increase profits and to gain an advantage over its lawfully acting competitors," Venus Laboratories made statements that its products were "nontoxic," "safer," and "Earth Friendly," when they were not.   (ECF No. 15 at 3).

Defendant fails to support its argument that Plaintiff Lizama has not sufficiently pleaded that it knew its statements were false, or that it intended "green' consumers would rely on those statements and purchase its products at a premium price.   The Court denies Defendant's motion to dismiss with regard to Plaintiff's fraud claim.

### 7.   *Injunctive relief*

Defendant argues Plaintiff Lizama's request for injunctive relief fails because she lacks standing to seek injunctive relief, and she already has an adequate legal remedy.   Defendant maintains that Plaintiff Lizama does not allege she has any intention to buy Defendant's products in the future, but even if she had, she is now aware of the ingredients and, therefore, could avoid any future injury.   City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there

is no showing of any real or immediate threat that the plaintiff will be wronged again."); Meagley v. City of Little Rock, 639 F.3d 384, 391 (8th Cir. 2011) (holding that "to obtain injunctive relief," a plaintiff "must show that she is 'likely to suffer some future injury'"); Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000) (affirming denial of claims of injunctive relief because there was not a "concrete" or "particularized" threat of future injury where plaintiffs did not intend to return to the place where their injury happened).

To seek injunctive relief, a plaintiff must show he or she "faces a threat of ongoing or future harm." Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037 (8th Cir. 2000). "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue and that the threatened injury is certainly impending." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 170 (2000) (citing Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Here, the Complaint alleges a threat of ongoing or future harm traceable to Venus Laboratories' conduct.  The Complaint alleges the labeling on Defendant's products are misleading and deceptive because they represent, among other things, that ECOS® products are "non-toxic" when they are not.  Plaintiff Lizama alleges she purchased Defendant's products believing they were non-toxic but would not have purchased them had she known the products contained toxic ingredients.   The Complaint alleges Venus Laboratories continues to sell products with misleading and deceptive labels.  Plaintiff also asserts she would benefit in a tangible way from injunctive relief because she alleges that if Venus Laboratories changes its practices, she is likely to buy the products in the future.

Although Plaintiff has "discovered" Venus Laboratories' alleged deception and misrepresentations, this does not preclude her from seeking injunctive relief, because Plaintiff alleges Defendant's allegedly unlawful misrepresentations are ongoing. See Hawkins v. Nestle U.S.A. Inc., 309 F. Supp. 3d 696 (E.D. Mo. 2018) ("[T]he fact that Plaintiff discovered Defendant's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. Plaintiff need plead nothing more to survive a motion to dismiss a request for injunctive relief for lack of Article III standing.") (citing Whitmore, 495 U.S. at 158–59; United States v. Students Challenging Regul. Agency Procs. (SCRAP), 412 U.S. 669 (1973)).

Plaintiff alleges she would purchase ECOS® products if Venus Laboratories changed its alleged unlawful practices.   These allegations "are enough to confer standing to pursue injunctive relief."   Browning, 539 F. Supp. 3d 965 (finding plaintiffs had Article III standing for injunctive relief where they alleged they would purchase the defendant's products if they could be assured defendant was not making misrepresentations on its labels).   The Court will not dismiss Plaintiff's request for injunctive relief at this time.

### D.   Motion to Strike Class Allegations

Finally, Venus Laboratories moves that the Court strike Plaintiff's nationwide class allegations because, Defendant argues, it is clear from the face of Complaint and without any need for discovery that Plaintiff's claims are not suitable for nationwide class treatment.

Motions to strike material from a pleading are made under Fed. R. Civ. P. 12(f), which provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   District courts enjoy broad discretion in deciding motions to strike, however, they are not favored and are infrequently granted,

because they amount to a drastic remedy and are often filed to create a delay or used as a harassing tactic.   Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080, 1092 (8th Cir. 2021), cert. denied, 212 L. Ed. 2d 762, 142 S. Ct. 2675 (2022); BJC Health Sys., 478 F.3d at 917 ("[s]triking a party's pleading . . . is an extreme and disfavored measure.").   Despite this, "it is sometimes appropriate to strike pleadings, such as when a portion of the complaint lacks a legal basis."   Donelson, 999 F.3d at 1092.   The Eighth Circuit has stated that it approves striking class allegations at the pleading stage "if it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained."   Id. (cleaned up)

In support of its motion to strike, Venus Laboratories first argues that Plaintiff Lizama only has standing to bring claims under Missouri law, where she resides, and any attempt to bring nationwide class claims should be rejected, because there is no named plaintiff who has standing to assert claims outside of Missouri.   Defendant cites to the following four district court cases in support of its argument:   Brenner v. Vizio, Inc., No. C17-5897, 2018 WL 2229274, at *2 (W.D. Wash. May 16, 2018); Mollicone v. Universal Handicraft, Inc., No. 2:16-CV-7322, 2017 WL 440257, at *9–10 (C.D. Cal. Jan. 30, 2017); In re Pre-Filled Propane Tank Antitrust Litig., No. 14-2567, 2016 WL 6963059, at *7 (W.D. Mo. Jan. 13, 2016), aff'd in part on other grounds, 893 F.3d 1047 (8th Cir. 2018); and Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016).

As Plaintiff Lizama states in her response, the Eighth Circuit has not addressed whether a named plaintiff in a proposed Rule 23 class action has standing to bring claims on behalf of

individuals in other states.   Other circuits, however, have examined the issue and concluded it is

not an issue of Article III standing, but rather a class certification issue under Rule 23 or a merits

issue.   See In re Zantac (Ranitidine) Prod. Liab. Litig., No. 21-10335, 2022 WL 16729170, at *6

(11th Cir. Nov. 7, 2022) (finding claims the plaintiffs made on behalf of class members who

purchased products in states other than the plaintiffs' home state should not be stricken on standing

grounds but should be addressed under Rule 23's requirements of commonality and typicality);

Mayor of Baltimore v. Actelion Pharms. Ltd., 995 F.3d 123, 134 (4th Cir. 2021) (same); In re

Asacol Antitrust Litig., 907 F.3d 42, 51 (1st Cir. 2018) (plaintiff may have standing to pursue class

claims under laws of multiple states based on a purchase in the plaintiff's state); Langan v. Johnson

& Johnson Consumer Cos., Inc., 897 F.3d 88, 93 (2d Cir. 2018) ("as long as the named plaintiffs

have standing to sue the named defendants, any concern about whether it is proper for a class to

include out-of-state, nonparty class members with claims subject to different state laws is a question

of predominance under Rule 23(b)(3)).

Furthermore, this Court has ruled that a decision on the issue of class certification under

Rule 23 "is logically antecedent" to determining whether a named plaintiff has standing to assert

claims on behalf of absent, putative class members under other state laws and, therefore, the issue

of class certification should be addressed first.   Moore, 2019 WL 4723077, at *7.   See also Buchta

v. Air Evac EMS, Inc., No. 4:19-CV-976 SRC, 2019 WL 4468943, at *4 (E.D. Mo. Sept. 18, 2019).

Based on this body of law, the Court does not find Defendant's argument persuasive and declines

to strike the nationwide class allegations in the Complaint on standing grounds.

Venus Laboratories also argues the Court should strike the nationwide allegations because

Plaintiff Lizama cannot satisfy the predominance or superiority requirements of Rule 23 due to

variations in state laws.   Defendant contends that under Missouri's choice of law rules, the class claims would be governed by the laws of the states where each of the class members purchased their products.   Citing to cases from three states and the Ninth Circuit Court of Appeals, Defendant argues that the states' laws on each of Plaintiff Lizama's common law claims vary greatly. Defendant summarily concludes that "[t]he necessity of applying fifty states' materially divergent laws to adjudicate the nationwide class claims prevents certification of such a class and warrants striking these allegations from the [Complaint]."   (ECF No. 23 at 33).

The Court will defer ruling on this issue.   The Court finds there is insufficient briefing on both the choice of law issue, as well as the laws of the various states for the five common law claims in the Complaint.   Consequently, deciding the issues of predominance and superiority would be premature at this time.   Vandenboom, 421 F.3d at 750 (declining to address arguments that are conclusory with insufficient briefing).   The Court declines to strike Plaintiff's nationwide class allegations pursuant to Fed. R. Civ. P. 12(f).

### III.    Conclusion

In sum, the Court agrees with Venus Laboratories that personal jurisdiction does not exist for Plaintiff Olsen's claims, and the Court will dismiss these claims without prejudice.   The Court finds that Plaintiff Lizama adequately alleges facts showing that some of the products she did not purchase are substantially similar to those she did purchase, and the misrepresentations made about these products are also substantially similar.   The Court, therefore, denies Venus Laboratories' motion to dismiss for lack of standing claims Plaintiff Lizama seeks to bring on behalf of unnamed class members related to Defendant's laundry detergents and dish soaps.   The Court grants Defendant's motion to dismiss for lack of standing claims related to all other products she did not

purchase.   The Court further denies Defendant's motion to dismiss for failure to state a claim with regard to Plaintiff Lizama's claims under the MMPA, for breaches of warranties, unjust enrichment, negligent misrepresentation, fraud, and for injunctive relief.   Finally, the Court declines to strike the nationwide class allegations pursuant to Fed. R. Civ. P. 12(f).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Venus Laboratories, Inc.'s Motion to Dismiss and strike allegations in the First Amended Complaint is **GRANTED in part and DENIED in part.**   [ECF No. 21].   The motion to dismiss for lack of personal jurisdiction is **GRANTED** as to Plaintiff Michelle Olsen.   The Court dismisses Plaintiff Michelle Olsen's claims against Defendant Venus Laboratories, Inc., without prejudice.   The Court further dismisses for lack of standing claims Plaintiff Delia De Santiago Lizama seeks to bring on behalf of unnamed class members to the extent the claims are related to products that are not laundry detergents or dish soaps.   In all other respects, Defendant's Motion to Dismiss and strike allegations in the First Amended Complaint is **DENIED.**

The Court will issue a separate Order of Partial Dismissal.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   27th   day of June, 2023.

36